KURTZ v. DETROIT, TOLEDO & IRONTON RAILROAD CO.

1. TRIAL—CORRECTIVE TESTIMONY RAISES NO ISSUE.
   Testimony introduced by way of correction of a misstatement does not make an issue of fact.

2. RAILROADS—NEGLIGENCE—PASSING DEFECTIVE CAR.
   A railroad company operating a switching yard and charged with the duty of inspecting cars before delivering them to other railroads, is guilty of negligence in passing a defective car.

3. SAME—ACCEPTANCE OF DEFECTIVE CAR.
   A railroad company in accepting cars for transportation may not rely on the inspection of the delivering company, and in accepting a defective car it is guilty of negligence.

4. MASTER AND SERVANT—FEDERAL EMPLOYERS' LIABILITY ACT—NEGLIGENCE—PROXIMATE CAUSE.
   The negligence of a railroad company in passing a defective car to another company is too remote to sustain an action under the Federal employers' liability act for the death of an employee caused by the defective car during the movement of the train in the yard by the receiving company; the negligence of the latter in failing to reinspect the car before acceptance being the proximate cause.

5. APPEAL AND ERROR—SAVING QUESTION FOR REVIEW.
   The Supreme Court may not consider a ruling against the successful party who has not sought review or assigned error.

Error to Monroe; Root (Jesse H.), J. Submitted January 12, 1927. (Docket No. 73.) Decided April 1, 1927.

Case by Otto C. Kurtz, administrator of the estate of Edward J. Gall, deceased, against the Detroit,

---

[1]Trial, 38 Cyc. p. 1533; [2]Master and Servant, 39 C. J. § 500; [3]Id., 39 C. J. § 500; [4]Id., 39 C. J. § 538; 47 L. R. A. (N. S.) 51; L. R. A. 1915C, 55; 18 R. C. L. 845; 5 R. C. L. Supp. 1006; [5]Appeal and Error, 4 C. J. § 2598.

238—Mich.—19.

Toledo & Ironton Railroad Company for the alleged negligent killing of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Reversed, and no new trial ordered.

*Clifford B. Longley, Wallace R. Middleton, E. E. Juntunen,* and *Golden & Nadeau,* for appellant.

*William F. Haas, Charles A. Thatcher,* and *Chester A. Meck,* for appellee.

CLARK, J. This is an action under the Federal employers' liability act for the averred negligent killing of plaintiff's decedent, Edward J. Gall, yardmaster of the yard of defendant Detroit, Toledo & Ironton Railroad Company at Delray. The declaration has separate counts on common-law negligence against the Pere Marquette Railway Company. Plaintiff was required to elect which action would be pursued and the election was against the Detroit, Toledo & Ironton Railroad Company, hereinafter called the defendant. Plaintiff had verdict and judgment. Defendant brings error.

Delray yard is the northern terminus of defendant's railroad, and is an interchange yard where cars are delivered to other railroads. Defendant's tracks ended at or near West End avenue, which bounds the easterly limits of the yard. On either side, north and south, of the main line are a number of side tracks. On the day in question, June 16, 1923, defendant's employees were engaged in switching cars and in assembling them on the side tracks for delivery to other railroads. When deceased came on duty at 3 o'clock in the afternoon, the cars for the Pere Marquette had been collected and coupled, about 40 in number, on side track north one. Near the middle of the string was a defective Pennsylvania car. It had end doors swinging outward. The doors were not closed. This

car came into the yard that day about 1 o'clock in the afternoon on a train of defendant. While it was still upon the main line, and at 1:10 p. m., it was inspected by a car inspector of the Pere Marquette. He inspected that car and other cars because he "knew that those cars were supposed to be turned over to the Pere Marquette railroad."

The inspector testified that the doors were then open, and bent, a fastening broken, all caused by a broken bulkhead due to shifting of the load. He testified that he reported to Mr. Duncan, then yardmaster of defendant (whom deceased succeeded at 3 o'clock), that the car was in bad order, and that he, the inspector, attached to it a bad order card, meaning that the car had to be repaired before it could be moved. Mr. Duncan contradicted the inspector's testimony of report to him. To what extent the doors were then open is in dispute. That a bad order card was attached to the car is also disputed. That it was defective, as stated, is not disputed. Defendant's employees did not set out the car for repair. They switched it into the Pere Marquette train. It does not appear that the car was inspected further by or on behalf of the Pere Marquette before acceptance of the train. Usual and permitted practice in the yard was that the Pere Marquette, before accepting trains tendered to it, removed dangerously defective cars found therein, or required defendant to do so. The train was turned over to the Pere Marquette about 3 o'clock that day. Its engine came into the yard manned by its employees, and was attached to the west end of the train to push it out of defendant's yard and across West End avenue to a main line. A Pere Marquette brakeman was on top of a car at each end of the train. The Pere Marquette conductor was at the switch shanty near West End avenue to get a clearance order. A signal to go was given and relayed by the brakemen

to the engineer. The engineer attempted to move the train but the cars were bunched. He reversed and attempted to pull the cars apart to get slack. The train parted at the end of the defective Pennsylvania car toward the engine. The air hose breaking, the moving cars and engine were stopped automatically, 'leaving a gap in the train about six feet wide. Deceased, defendant's yardmaster, standing near and observing the break, stepped between the cars and turned the angle cock to prevent escape of air and to release the brakes. This done, it is said, he remained for an instant between the cars. The brakes being released, the engine with the cars attached, without further signal, moved forward, closing the gap. Deceased was caught between the open projecting door of the Pennsylvania car and the end of the moving car, and was killed instantly.

The evidence is to the effect that the Pere Marquette, by its crew and with an engine, came into the yard as a licensee, with the right and duty to take out its train. Its employees were subject to its orders. The switching in the yard was in charge of defendant. A duty of the yardmaster was to give information to Pere Marquette employees as to when and where trains for that road were to be found. There is no evidence of agreement for joint operation or for joint inspection. On some occasions, when a heavy Pere Marquette train was to be moved from the yard, an engine of defendant had assisted, but on this day an engine of defendant did not assist. The movement was wholly in charge of Pere Marquette trainmen and enginemen. Three witnesses testifying made statements that an engine of the defendant was attached to the train at the time of the accident, but by way of correction and explanation it was shown that the witnesses made such statements on surmise, and that they had no knowledge that such

was the fact. There was positive testimony that no engine of the defendant was then attached to the train. It is a rule of law that testimony by way of correction of a misstatement does not make an issue of fact. *West* v. *Railroad,* 229 Mich. 590.

A preponderance of evidence is to the effect that the Pennsylvania car in the yard of defendant, and before it was turned over to the Pere Marquette, was in bad order and dangerously defective, and that defendant's act in placing such car in the Pere Marquette train was negligent. The weight of evidence supports the statement that the Pere Marquette was negligent in accepting the car. That company's inspection of cars while they were about defendant's yard and before being assembled by defendant into a train amounts to no more than this, that such company relied on defendant's employees not to deliver any bad order cars. If an employee of the Pere Marquette had been killed in the circumstances above related, the inspection made would not (the fellow-servant rule being abrogated) have been a good defense. It could not rely absolutely on the employees of defendant not to deliver to it dangerously defective cars. It had the positive duty of inspection before accepting the train tendered to it by the defendant. *Goodrich* v. *Railroad Co.,* 116 N. Y. 398 (22 N. E. 397, 5 L. R. A. 750, 15 Am. St. Rep. 410). And there is evidence that the Pere Marquette was negligent in moving its engine and cars, without signal so to do, after the brakes had been set in emergency by the parting of the train.

The record will sustain a finding that Mr. Gall's death was caused proximately by the subsequently intervening negligence of the Pere Marquette. Defendant's negligence is remote. This accords with a well-settled rule of law supported by the weight of authority. A leading case is *Fowles* v. *Briggs,* 116 Mich. 425 (40 L. R. A. 528, 72 Am. St. Rep. 537).

There defendants loaded, negligently it was averred, on a flat car 11,000 feet of maple lumber.   It was piled in two tiers parallel with the sides of the car.   Three days later the railroad crew was ordered to take the car from the yard into a train.   It was shunted at a rate not to exceed from three to five miles an hour upon a level track toward a box car.   A brakeman attempted to make the coupling.

When the car of lumber came in contact with the box car the lumber shifted and crushed the brakeman to death.   His administrator brought suit against the defendants who had loaded the lumber.   It was held that there could be no recovery, and it was said:

"There must be causal connection between the negligence and the hurt, and such causal connection is interrupted by the interposition between the negligence and the hurt of an independent human agency. * * * In the present case the defendants owed the railroad company the duty of using ordinary care in loading the car in question; but, before the car came to decedent, it was the duty of the railroad company to provide for the inspection.   Here was the intervention of an independent human agency."

We quote syllabus of *Lellis* v. *Railroad Co.*, 124 Mich. 37 (70 L. R. A. 598):

"A railroad company which delivered to a connecting line, for transshipment, a car of lumber negligently loaded, is not liable for the death of a switchman of the latter company, caused by the shifting of the lumber, where the accident happened after it became the duty of the latter company to provide for the inspection of the car."

And syllabus from *Glynn* v. *Railroad Co.*, 175 Mass. 510 (56 N. E. 698, 78 Am. St. Rep. 507):

"If a railroad car has passed from the control of one company into that of another, and before it reaches the place of accident it has passed a point at which the cars are inspected, the responsibility of the first railroad company for a defect in the car which was not secret is at an end."

The rule is stated in a well-considered opinion reviewing authorities (*Missouri, etc., R. Co.* v. *Merrill,* 65 Kan. 436 [70 Pac. 358, 59 L. R. A. 711, 93 Am. St. Rep. 287]) :

"A recovery has been denied in cases like the one at bar on two grounds : First, that there is a positive duty resting on the receiving railway company to inspect the car turned over to it for transportation by another company, to the end that its employees may not be injured by defects existing before its receipt; that the omission or negligent discharge of such duty breaks the causal connection between the negligence of the company tendering the defective car and the plaintiff's injury. In such cases the failure to inspect or the negligent manner of doing it is the proximate cause of the injury to the employee, and the negligence of the company turning over the unsafe car is the remote cause. The failure to discharge the obligation to inspect interposes an independent agency which severs the causal connection between the company first guilty of negligence and the hurt."

See *Baltimore & Potomac R. Co.* v. *Mackey,* 157 U. S. 72 (15 Sup. Ct. 491) ; *Texas & Pacific R. Co.* v. *Archibald,* 170 U. S. 665 (18 Sup. Ct. 777) ; *Goodrich* v. *Railroad Co.,* 116 N. Y. 398 (22 N. E. 397, 5 L. R. A. 750, 15 Am. St. Rep. 410) ; 46 L. R. A. 119, note.

It does not appear that it was a part of Mr. Gall's duty to act as a trainman for the Pere Marquette, to do what he did. That while so engaged the relation of employer and employee existed between him and the defendant is a question we need not determine. It does appear that defendant desired prompt dispatch of trains from its yard, and that to that extent Mr. Gall had an interest in the operation of the Pere Marquette train. That when he attempted to assist in the movement of the said train he was a volunteer with an interest in the work and therefore not acting at his own risk (39 C. J. p. 270) is a question unnecessary to decision.

As plaintiff has not sought review, and has not assigned error, we may not consider the order of the court requiring said election of the cause of action. The case is most unfortunate for the widow of the deceased, but a judgment against one not here guilty of actionable negligence can not be permitted to stand.

Judgment reversed without new trial, and with costs to defendant.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred.