UNITED STATES of America,
Appellant,

v.

TUG MANZANILLO, her engines, tackle
and apparel, and Shaver Transporta-
tion Company, Appellees.

TUG MANZANILLO, her engines, tackle
and apparel, and Shaver Transporta-
tion Company, Appellants,

v.

UNITED STATES of America,
Appellee.

No. 17134.

United States Court of Appeals
Ninth Circuit.

Nov. 16, 1962.

William H. Orrick, Jr., Asst. Atty.
Gen., C. E. Luckey, U. S. Atty., Morton
D. Hollander, Alan S. Rosenthal and W.
Harold Bigham, Attys., Dept. of Justice,
Washington, D. C., Keith Ferguson, San
Francisco, Cal., and Sidney I. Lezak, U.
S. Atty., Portland, Or., for appellant.

Mautz, Souther, Spaulding, Kinsey &
Williamson and Kenneth E. Roberts,
Portland, Or., for appellee.

Before POPE, HAMLEY and KO-
ELSCH, Circuit Judges.

POPE, Circuit Judge.

The United States brought this ac-
tion to recover from Shaver Transporta-
tion Company, appellee here, payments
which the Government had made to its
employee, a Capt. Eric A. Peters, for
maintenance and cure. These payments
were occasioned by an injury received
by Peters upon one of appellee's tugs.

The United States, owner and operator
of SS Harold L. Winslow, entered into a
contract with Shaver whereby the latter
undertook to tow the Government's ves-
sel, which was loaded with grain, from
Portland, Oregon, to a berth at Astoria.
After the Winslow was berthed at As-
toria, the Tug Manzanillo, one of two
tugs used in towing the vessel, following
the usage in such cases and under such
contracts, took off the master of the
ship Peters and his crew and carried
them ashore. The crew boarded the
Tug by descending a small ladder placed
against the Winslow. From this they
stepped off upon the deck near a place
where there was a small hatch. The

hatch cover was not secured to the deck as it should have been and when Captain Peters stepped off the ladder on to the hatch cover it capsized and dropped him into the hold. In consequence of the injuries received by Peters, the United States, his employer, paid him a sum in excess of $5900 by way of maintenance and cure. Peters brought suit against Shaver in the state court of Oregon to recover damages for his injuries. The suit was settled for $16,000, and Capt. Peters executed on May 25, 1956, as part of the settlement, a release of Shaver Transportation Company from all claims arising from the fall aboard the Tug. Most of the amount paid by the United States for maintenance and cure was paid to Peters prior to this settlement of the state court suit; $1400 was paid subsequent to that settlement.

The theory of the suit instituted in the court below was that the amounts paid to Peters were damages which resulted from Shaver's breach of its obligation to perform its towing contract with due care. The case was tried upon a stipulation of facts contained in a pretrial order including certain exhibits stipulated to by the parties.

The trial court held that the United States was entitled to recover from the appellee Shaver Transportation Company but limited the recovery to the sum of $1400, the amount of maintenance and cure paid by the United States subsequent to the $16,000 settlement on May 25, 1956; all other recovery was denied. The United States, in appealing, assigns error in this failure to award the full amount paid to the employee by the United States. The appellees have cross appealed assigning error in the court's award of the $1400 contending that the United States is not entitled to recover any amount or under any theory.

The trial court's findings are incorporated in an opinion in which the court held, correctly, that the United States was entitled to recover from the owner of the Tug on account of the latter's failure to perform its towage contract. In this respect the trial court stated: "The evidence is clear that respondents, as part of the towage contract, agreed to take the master and crew of Winslow ashore and that this was a usual and customary arrangement in towing dead ships to the Maritime Administration Reserve Fleet at Astoria. Likewise, it is clear that Peters was injured while he was coming aboard the Tug pursuant to the usual and customary practice in connection with such towage contracts. Under such circumstances, the usual and customary practice forms a part of the contract itself. * * *

"Since the respondents assumed the obligation of transporting the master and crew to shore, it also assumed the duty to furnish a seaworthy vessel. The evidence is convincing that the Tug was unseaworthy in the claimed particulars. The fact that the hatch cover was in a dangerous condition was recognized by the members of the crew of the Tug. They claim the condition was so dangerous that they actually cautioned, or attempted to caution, Peters of the danger. In this state of the record, I must hold that the Tug was unseaworthy. Likewise, it is clear that such unseaworthy condition was the proximate cause of Peters' injuries.

* * * * * *

"The libel in this case is based primarily on a breach of a contract. Such contract required respondents to furnish a seaworthy tug. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corporation, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 1958, 335 [355] U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413, (stevedore cases). A usual and customary service rendered becomes part of the contract."

We think the court below in holding that there was liability on the part of Shaver Transportation Company to the United States, correctly held that Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, required such a determi-

nation. The Ryan case involved an agreement by a stevedoring company to perform all stevedoring operations required by a shipowner in the latter's coastwise service. The stevedoring contractor loaded one of such ships with a cargo including rolls of pulpboard which were insufficiently secured when stored on board. A longshoreman employed by the stevedoring contractor in the unloading at a pier in Brooklyn, New York, was injured by a roll of pulpboard thus insufficiently secured. The longshoreman was paid compensation under the Longshoremen's Act but sued the shipowner for a much larger sum asserting that the ship was unseaworthy and that the shipowner had neglected to furnish him a safe place to work. The shipowner filed a third party complaint against the stevedoring contractor claiming that it was entitled to reimbursement for the amount of any judgment against the shipowner. The shipowner's claim for such recovery was sustained, the Court saying: "The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service." (P. 133, 76 S.Ct. p. 237) To the same effect see Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413. The Ryan and the Crumady cases upheld such recoveries against stevedoring contractors. The same principle has been applied in sustaining recoveries against towing contractors, holding that a towing agreement gives rise to a "warranty of workmanlike service" which is breached by negligence on the part of the operator of the tug. James McWilliams Blue Line v. Esso Standard Oil Co., 2nd Cir., 245 F.2d 84; Dunbar v. Henry Du Bois' Sons Co., 2d Cir., 275 F.2d 304.

We are of the opinion that the doctrine of the Ryan, Crumady, James McWilliams Blue Line and Dunbar cases was properly applied by the trial court in the present case; and that the court properly held that where the owners of the Tug "permit or allow an unsafe condition to exist, such condition is in violation of the contract with the libelant and it may institute an action and prosecute a libel on such contract to recover the amount paid to a third person by reason of such unsafe condition."

■ However, the trial court found that the United States could recover in this action only the $1400 which was paid to Peters for maintenance and cure subsequent to the date that Peters settled his action in the state court. In this we think the trial court was in error. The greater portion of what the United States paid to Peters for maintenance and cure was paid prior to the time that the appellee made its settlement with Peters. For the reasons correctly expounded by the district court the moment the United States paid these sums to Peters it had the right to recover such sums from the owners of the Tug. To hold that by paying certain sums to Peters on May 25, 1956, the Shaver Transportation Company had thereby discharged its then existing liability to the United States, is a wholly impermissible conclusion. If A is indebted to B he cannot discharge that indebtedness by payment to C. Under the facts here the matter is just that simple.

We think that the trial court was misled by two impermissible assumptions which it made and which are disclosed in its opinion. The first assumption is that

when Peters received $16,000 on settlement of the state court suit on May 25, 1956, he received compensation for loss of earnings, medical, doctor and hospital expenses. From this the court concluded that such payments included maintenance and cure, and therefore held that Peters was not entitled to those payments and also maintenance and cure from his employer, citing Gomes v. Eastern Gas and Fuel Associates, (D.C.Mass.), 127 F. Supp. 435.[1]

The difficulty with this assumption on the part of the court is that there is nothing in the record to show that the $16,000 paid included compensation for loss of earnings and medical expenses or for room and board. For aught that appears, both parties to that settlement may have known that Peters was receiving maintenance and cure payments and agreed to the $16,000 figure as covering damages exclusive of the items payable for maintenance and cure.[2]

Again, as the Government has pointed out, it cannot be of interest to the United States or affect its recovery even if Peters did receive in the $16,000 settlement an overpayment on account of loss of wages or for medical expenses, board and room, etc., which he was not entitled to claim.

However, the court was more seriously misled by its apparent assumption that the right of the United States to recover from Shaver is in the nature of a right to subrogation to the claims of Peters. The court said: "Since the libelant derives its cause of action from Peters, its claim should have no greater validity than his." From this the court reasoned that a recovery by the United States of the full amount of its maintenance and cure payments would be equivalent to a double payment to Peters. There is no basis in law for the court's statement last quoted and for which the court cited no authority. On the contrary, Ryan Stevedoring Co. v. Pan Atlantic Steamship Corporation, supra, on which the trial court properly relied, demonstrates conclusively that the claim of the United States does not arise through subrogation to the claims of Peters. In fact, it arises out of the contract for proper towage and proper operation of the Tug which the United States and the appellee entered into.

The reason that the Ryan case demonstrates that subrogation has no place in a claim of this kind, is that in the Ryan case the injured longshoreman had as against the stevedoring contractor no claim whatever other than his claim under the Longshoremen's Act. The shipowner's recovery from the stevedoring company was never considered to be based on any subrogation to the rights under the Longshoremen's Act. The Court made it very clear that the recovery was based upon the contract between the shipowner and the stevedoring company. So here, the recovery is based upon the contract between the United States and the appellee Shaver Transportation Company. As between them, the rights and claims of Peters against the appellee are immaterial and irrelevant.

1. See also Gypsum Carrier Inc. v. Handelsman, 9 Cir., 307 F.2d 525, 533.

2. Peters, in his state court action, had alleged loss of earnings and medical and hospital expenses incurred. The settlement agreement and release executed on May 25, 1956, contained the following paragraphs: "WHEREAS, said Eric Peters in said action alleged that he was regularly and gainfully employed and earning the sum of approximately $400.00 per month and that he lost earnings in the sum of approximately $4,000.00 and will lose further earnings in the future and that he has incurred medical and hospital expenses in the sum of $682.20 and will incur further expenses in the future; and * * *. It is further understood and agreed that this document and the settlement provided for herein shall not be construed either as a release or satisfaction, in whole or in part, of any claim which said Eric Peters may have made or may make in the future for maintenance and cure against his employer at the time of said accident, namely, Pope & Talbot Steamship Company, the United States of America or another person, firm or corporation which may be liable for such maintenance and cure under applicable maritime law."

The judgment is reversed and the cause is remanded with directions to enter judgment in favor of the United States and against the appellees for the full amount claimed by the United States.