**KAWASAKI KISEN, K. K., Plaintiff,**

v.

**DETROIT HARBOR TERMINALS, INC., et al., Defendants.**

**Civ. A. No. 32757.**

United States District Court, E. D. Michigan, S. D.

Feb. 3, 1972.

John L. Foster, Detroit, Mich., for plaintiff.

Joseph J. Bileti, Donald J. Miller, Floyd S. Westcott, Detroit, Mich., for defendants.

## MEMORANDUM AND ORDER

DeMASCIO, District Judge.

The Kamikawa Maru, a cargo vessel, docked in Cleveland, Ohio, to unload a portion of her cargo prior to her arrival in Detroit. The defendant Cleveland Stevedore Company (Cleveland) was employed for the stevedoring operations aboard the vessel. During Cleveland's unloading of the vessel, its personnel partially dislodged a king beam support-ing the No. 2 upper tween deck hatch boards. The chief mate of the vessel was duly informed. He and the ship's crew, as well as Cleveland's employees, sought unsuccessfully to replace the king beam. The weight of the Detroit load remaining in the No. 2 hold made it impossible. They agreed it would be necessary to completely unload the No. 2 hold before replacement of the beam was possible. To save an unnecessary loss of time and a duplication of effort involved in completely unloading the No. 2 hold, the chief mate decided to attend to the dislodged beam at the next port.

With the ship anchored in Detroit, the defendant Detroit Harbor Terminals (Detroit Harbor) undertook the unloading operation. Detroit Harbor, finding itself in need of a laborer, had previously called defendant Avis Men, Inc. (Avis) and requested Avis to supply them with a laborer capable of performing as a longshoreman. Avis furnished Mr. Charles Cross. Cross undertook the task of unloading the balance of the load of the No. 2 hold under the supervision and at the direction of Detroit Harbor. While engaged in unloading the cargo, Cross was injured. To recover damages for his injuries, he instituted a state court action against the shipowner and both stevedore companies, alleging that his injuries were proximately caused by the unsafe condi-tion of the negligently dislodged king beam.

The shipowner, a defendant in the state action, started this admiralty suit against the two stevedore companies and Avis seeking indemnification for sums expended to date in defense of the state action as well as future costs, attorney fees, and for the amount of the judgment entered against it if any. Plaintiff's claim for indemnity is based upon the authority of Ryan Stevedoring Co. v. Pan Atlantic Steamship Co., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, which established the principle that a stevedore warrants that his contractual services will be rendered in a workmanlike manner. If a stevedore company breaches this warranty and an injured third party brings

suit against the shipowner, the shipowner may look to his contractual relationship with the stevedore company for indemnification.

> "Petitioner's (shipowner's) claim for indemnity primarily rests on the contractual relationship between it and respondent (stevedore company). While the stevedoring contract contained no expressed indemnity clause, it obligated respondent 'to faithfully furnish such stevedoring services as may be required' and to provide all necessary labor and supervision for 'the proper and efficient conduct of the work.' As this court said in *Ryan* . . . such language constitutes *'a contractual undertaking to perform with reasonable safety'* 350 U.S. at 130, 76 S.Ct. at 235, and to discharge 'foreseeable damages resulting to the shipowner from the contractor's improper performance' 350 U.S. at 129, footnote 3, 76 S.Ct. at 235." Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 565, 78 S.Ct. 438, 440, 2 L.Ed.2d 491 (1958) (Emphasis Added)

Cleveland and Avis separately moved for summary judgment pursuant to Rule 56 F.R.Civ.P. The court considers the merits of each motion separately. Cleveland's motion for a summary judgment is grounded upon the theory that its negligent dislodgment of the king beam, if it in fact were negligent, was not the proximate cause of Cross' injuries. Cleveland's theory is that even though the court may find that its act in dislodging the king beam was negligence, it nevertheless notified the chief mate about this condition and his decision to proceed to Detroit despite the dislodged beam was an intervening cause. This intervening cause, as a matter of law, broke the causal connection between its negligence and Cross' injuries. Because of this, it argues entitlement to a summary judgment. The court must consider, therefore, whether the chief mate's decision to continue his journey to Detroit with a dislodged king beam was an intervening cause and the sole proximate cause of

Mr. Cross' injury. There is Michigan law supporting Cleveland's position. Fowles v. Briggs, 116 Mich. 425, 74 N.W. 1046; Griffin v. Jackson Light and Power Co., 128 Mich. 653, 87 N.W. 888; Kurtz v. Detroit, Toledo, and Ironton Railroad Co., 238 Mich. 289, 213 N.W. 169; Lellis v. Michigan Central Railroad, 124 Mich. 37, 82 N.W. 828; Parks v. Starks, 342 Mich. 443, 70 N.W.2d 805; Shadduck v. Grand Rapids & I. R. Co., 179 Mich. 433, 146 N.W. 238.

The difficulty with Cleveland's position, is that the shipowner's cause of action for indemnification does not have its origin in tort. The question presented here is whether Cleveland performed their stevedoring contract with "reasonable safety."

> "Competency and safety of stowage are inescapable elements of the service undertaken. The obligation is not a quasi-contractual obligation implied in law or arising out of a non-contractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed for one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service." *Ryan*, supra, 350 U.S. at pp. 133, 134, 76 S.Ct. at p. 237.

Therefore, the circumstances of this action for indemnity must withstand the argument that an intervening act destroyed the chain of causation. Cleveland urges this court to rule that the shipowner is equally as responsible for Mr. Cross' injuries because the shipowner with complete knowledge of the dislodged beam put to sea bound for another port. It is clear, however, that a summary judgment cannot be granted because of what the shipowner did or failed to do:

> "Petitioner suggests that, because the shipowner had an obligation to supervise the stowage and had ought to reject unsafe stowage of the cargo and

did not do so, it now should be barred from recovery from the stevedoring contractor of any damage caused by that contractor's uncorrected failure to stow the rolls 'in a reasonable safe manner.' Accepting the facts and obligations as above stated, the shipowner's present claim against the contractor should not thereby be defeated. Whatever may have been the respective obligations of the stevedoring contractor and of the shipowner to the injured longshoreman for proper stowage of the cargo, it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense." *Ryan*, supra, at pp. 134, 135, 76 S.Ct. at p. 238.[1] Cleveland's motion for summary judgment must be and is therefore denied.

Although a shipowner's cause of action for indemnification has occasionally been sustained against those who are not stevedores (Dunbar v. Henry DuBois' Sons, Co. v. Bronx Towing Line, Inc., 2nd Cir., 275 F.2d 304; H & H Ship Service v. Weyerhaeuser Line, 9th Cir., 382 F. 2d 711; United New York Sandy Hook Pilots Assn. v. Rodermond Industries, Inc., 3rd Cir., 394 F.2d 65; United States v. Tug Manzanillo (Manzanillo v. United States), 9th Cir., 310 F.2d 220), we nevertheless favorably view Avis' motion for summary judgment. A careful analysis of the cases holding a non-stevedore liable for a stevedore's warranties will disclose that in each case the defendant was directly engaged in performing services for the shipowner. Under the circumstances of this case, Avis' position 'is easily distinguishable. Avis merely supplied a temporary laborer for Detroit Harbor, the stevedore company which performed the services for the shipowner. Avis' connection with the ship, if any, was indirect and extremely remote. When Cross reported for work he

was completely controlled by Detroit Harbor. Avis could not and did not retain the slightest control or supervision of his activities. Under the facts admitted here, we conclude that Avis did not have a contractual relationship with the shipowner.

The plaintiff shipowner has not cited authority to the contrary. It has not suggested sound public policy reasons for extending a stevedore's warranty to one in Avis' position. Given such a remote connection with actual stevedore functions, we conclude it would be an unsound policy to extend a stevedore's warranties to one in Avis' circumstances. Avis did not give a warranty, express or implied, that could reasonably give rise to a cause of action against them for indemnification. In support of its position that Avis should be held liable on a stevedore's warranties, the plaintiff shipowner has referred the court to Hartnett v. Reiss S. S. Co., 2d Cir., 421 F.2d 1011; Williams v. Pennsylvania Railroad Co., 2d Cir., 313 F.2d 203. In the *Hartnett* case, the company that supplied the longshoreman to do the stevedore's work actually supervised his activity. We have already stated that in our view this is an important distinguishing factor between the two cases. The question of whether a company merely supplying a laborer for a stevedoring firm should be held liable for a stevedore's warranties was not considered in the *Hartnett* case. In Williams v. Pennsylvania Railroad Co. the defendant was directly engaged in assisting the stevedore unload a ship. An employee of the stevedore company was injured. In an action to recover damages, he joined *Pennsylvania* as a defendant. The court held that *Pennsylvania* could maintain an action against the stevedore company for indemnification despite the fact that the stevedore's warranties ran to the shipowner and not to *Pennsylvania*. The court held that under the facts *Pennsylvania* could seek indemnification as a third party beneficiary of the steve-

---

1. See also D/S Ove Skou v. Hebert, 365 F.2d 341 (5th Cir. 1966), establishing that a finding of negligence on the part of the shipowner does not as a matter of law preclude the shipowner's *full* indemnification from the stevedore companies.

dore's warranties to the shipowner. Williams v. Pennsylvania stands for the proposition that one claiming the benefit of a stevedore's warranty need not be a party to the contract between the stevedore and shipowner. It is to be noted that the same distinguishing fact is present. *Pennsylvania* was engaged in actually assisting the stevedore unload the ship. The *Williams* case does not discuss the question whether a party who does not participate in unloading the ship should also be required to give a warranty to the shipowner. We are being asked to require Avis to respond on a warranty theory when they do not so much as have a choice in the conduct of the work being performed. We think such an extension of the warranty theory is unjustified.

The parties here agreed that there is no issue as to any material fact. Therefore, Avis' motion for summary judgment is hereby granted.

It is so ordered.