### PALAZZOLO v. PAN ATLANTIC S. S. CORP. et al.

### PAN ATLANTIC S. S. CORP. v. RYAN STEVEDORING CO., Inc.

#### Civ. A. No. 11520.

United States District Court
E. D. New York.

April 7, 1953.

Fink & Frank, New York City, Jacquin Frank, New York City, of counsel, for plaintiff.

Gay & Behrens, New York City, Edward J. Behrens, New York City, of counsel, for defendants and third party plaintiff.

Alexander & Ash, New York City, Sidney J. Schwartz, New York City, of counsel, for third party defendant.

INCH, Chief Judge.

At the trial of this personal injury action the jury rendered a verdict in favor of plaintiff against the defendant, Pan-Atlantic Steamship Corporation (hereinafter called "Pan-Atlantic"), charterer of the S. S. Canton Victory.

At a pretrial conference plaintiff agreed to discontinue the action as against the defendant, Waterman Steamship Corporation.

Plaintiff, a longshoreman employed by Ryan Stevedoring Co., Inc., was seriously injured aboard the S.S. Canton Victory when he was struck by a roll of paper pulp during the discharge of the vessel's cargo at Brooklyn, N. Y. The theory of plain-

tiff's claim was that the cargo of paper pulp was improperly stowed. The loading of the cargo at Georgetown, S. C. and the discharge of the cargo at Brooklyn, N. Y., were both performed by plaintiff's employer, Ryan Stevedoring Co., Inc. (hereinafter called "Ryan").

It was agreed among the parties that the only matter to be submitted to the jury was Pan Atlantic's liability to plaintiff, and, in the event of a recovery, that the Court alone should determine the issues of fact and law presented by Pan-Atlantic's third party complaint for indemnity over against Ryan.

In accordance with the allegations of plaintiff's complaint, and in line with the theory upon which the case was tried, the jury was charged as to unseaworthiness and negligence. The jury thereupon rendered a general verdict in favor of plaintiff against Pan-Atlantic in the sum of $75,000, and the matter now presented for determination is Pan-Atlantic's claim for indemnity against Ryan, the third party defendant.

It is conceded that plaintiff's employer, Ryan, has complied with the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., and it is also conceded that there was no written contract of indemnity between Ryan and Pan-Atlantic.

It is Pan-Atlantic's contention that while it has been held in this type of case that there can be no "contribution" between joint tort-feasors, American Mut. Liability Ins. Co. v. Matthews, 2 Cir., 182 F.2d 322; Mikkelsen v. S/S Granville, 2 Cir., 191 F. 2d 858, Per Curiam on Petition for Rehearing, 2 Cir., 192 F.2d 809, 1951 A.M.C. 1938; Halcyon Lines v. Haenn Ship Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318, those cases are inapplicable here for the reason that Pan-Atlantic was not a joint tort-feasor. Pan-Atlantic argues that liability has been visited upon it solely because of an improper stowage of cargo which made the ship unseaworthy and that since Ryan alone created the unseaworthiness which is "essentially a species of liability without fault", Seas Shipping Company v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 877, 90 L.Ed.

1099, this case comes within the rule of those cases which imply a contract of indemnity based upon the failure of a party to properly perform work which it contracted to do. See: Burris v. American Chicle Co., 2 Cir., 120 F.2d 218; Rich v. U. S., 2 Cir., 177 F.2d 688; Standard Oil Co. v. Robbins Dry Dock & Repair Co., 2 Cir., 32 F.2d 182; Seaboard Stevedoring Corporation v. Sagadahoc S. S. Co., 9 Cir., 32 F.2d 886; U. S. v. Rothschild International Stevedoring Co., 9 Cir., 183 F.2d 181. In such cases the employer's or indemnitor's negligence is described as being the "sole", "active", "primary" or "affirmative" cause of the employee's injury. However, if the shipowner is a joint tort-feasor a contract of indemnity is not implied for

"To imply such a promise would mean that the employer agreed to protect the shipowner against liability arising out of the shipowner's own negligence. In the absence of an express promise, such an implication would be utterly unreasonable." American Mut. Liability Ins. Co. v. Matthews, supra, 182 F.2d at page 324.

The difficulty with Pan-Atlantic's contention is that it assumes that the jury's verdict was, and could only have been, based on a finding of unseaworthiness. The fact is that plaintiff's complaint alleged both unseaworthiness of the vessel and negligence on the part of Pan-Atlantic, and the case was tried and submitted to the jury on both theories.

In my judgment there is sufficient evidence in this record to justify a finding of negligence on the part of Pan-Atlantic by the jury, and also, pursuant to the stipulation of the parties, for the Court to make such a finding with respect to the issues raised by the third party complaint. It was plaintiff's basic claim that thin pieces of dunnage, rather than the customary wedges, had been used in stowing the cargo at Georgetown with the result that a roll of pulp "jumped" the dunnage and struck the plaintiff during the discharge of the cargo at Brooklyn, N. Y.

The record shows that at the time of the accident Captain Fischer was the second mate of the S. S. Canton Victory. Ac-

cording to his testimony on direct examination, Ryan's job was to load cargo at Georgetown, "however to the general satisfaction of the mate in charge of the vessel, the master, and the chief officer and his under officers". Fischer said that one of his jobs was to "go in and out of each of the five holds, and * * * check to see that they (Ryan) were loading the cargo properly and *chocking* it" and that the "primary job, of course, was watching the cargo, this is in port, and to see that it is loaded and stowed properly for the safety of the vessel and the cargo and crew that sails the vessel". (Emphasis supplied.) On cross-examination he stated that he also took into consideration the safety of the longshoremen who were to discharge the cargo, and that had he seen pieces of dunnage used instead of wedges he would have done something about it. He testified that he was in hold No. 3, where the accident occurred, both at the time of loading and unloading, to see that everything was properly done and that he was "primarily concerned to check the damage or the pilferage or *any unsafe method or practice*." (Emphasis supplied.) It was his contention that the vessel generally carried a quantity of chocks aboard as part of the ship's gear, and that there were chocks on the dock and that Ryan's men used them to stow the cargo. He agreed that if he had seen anything wrong he would have complained to the hatch boss or to the pier superintendent of the stevedore, but that everything was properly done by Ryan and that he made no complaints.

■ However, the hatch boss and three longshoremen in plaintiff's gang testified that there were no wedges used in the hold at all, and that merely "scrap" dunnage, which one of the longshoremen described as "firewood", was employed to stow the heavy rolls of paper. In view of this testimony, it is plain that Pan-Atlantic's cargo officer did not properly perform his admitted duty to supervise the safe and careful loading of the vessel. It cannot be said, as urged by Pan-Atlantic, that the absence of wedges was a latent or hidden defect which the cargo mate could not reasonably have been expected to discover.

The testimony of the longshoremen as to the generally dangerous manner in which the cargo was stowed without wedges leads to no other conclusion but that the cargo officer in the exercise of reasonable care should have discovered and corrected the condition. Captain Fischer's own testimony shows his complete knowledge of the loading and unloading operation, the opportunity and ability on his part to discover the defect in stowage at either the loading or unloading port, and his authority to remedy the condition or halt the work. Consequently it is my conclusion that while Pan-Atlantic was guilty of a lesser degree of fault than Ryan, it was, nevertheless, a joint tort-feasor, and under such circumstances, a contract of indemnity cannot be implied on the part of Ryan.

Ryan is entitled to judgment in the third party action together with costs.

The motions upon which decision was reserved are denied.

Settle order.