# RYAN STEVEDORING CO., INC. *v.* PAN-ATLANTIC STEAMSHIP CORP.

No. 4.   Argued March 3–4, 1955; affirmed by an equally divided Court, April 11, 1955; rehearing granted, May 16, 1955; reargued October 11–12, 1955.—Decided January 9, 1956.

*Sidney A. Schwartz* argued the cause for petitioner. With him on the brief was *Edward Ash.*

*Edward J. Behrens* argued the cause for respondent. With him on the brief was *Charles H. Lawson.*

By special leave of Court, 348 U. S. 948, *Leavenworth Colby* argued the cause for the United States, as *amicus curiae,* urging affirmance. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Burger, Paul A. Sweeney* and *Herman Marcuse.*

MR. JUSTICE BURTON delivered the opinion of the Court.

This case presents two questions as to the liability of a stevedoring contractor to reimburse a shipowner for damages paid by the latter to one of the contractor's longshoremen on account of injuries received by him in the course of his employment on shipboard. 1. The first question is whether the Longshoremen's and Harbor Workers' Compensation Act [1] precludes a shipowner from asserting such a liability. 2. The second is whether the liability exists where a contractor, without entering into an express agreement of indemnity, contracts to perform a shipowner's stevedoring operations and the longshoreman's injuries are caused by the contractor's unsafe stowage of the ship's cargo. For the reasons hereafter stated, we answer the first question in the negative and the second in the affirmative.

In 1949, respondent, Pan-Atlantic Steamship Corporation, a Delaware corporation, operated the SS. *Canton*

---

[1] 44 Stat. 1424 *et seq.,* as amended, 33 U. S. C. § 901 *et seq.*

*Victory* in the American coastwise trade under a bareboat charter. As evidenced by letters, but without a formal stevedoring contract or an express indemnity agreement, respondent secured, for that year, the agreement of petitioner, Ryan Stevedoring Co., Inc., an Alabama corporation, to perform all stevedoring operations required by respondent in its coastwise service. Pursuant to that contract, petitioner loaded the *Canton Victory* at Georgetown, South Carolina, with mixed cargo. This included pulpboard, such as is used in making corrugated paper and paper bags, shipped in rolls 4 feet wide and 3 to 5 feet long. Petitioner stowed some of these rolls side-by-side on the floor of Hatch No. 3 and "nested" others above them by placing the upper rolls in the troughs between the lower ones. To immobilize the rolls, it was necessary to secure or "chock" the bottom tier with wedges or with miscellaneous pieces of wood known as "dunnage." There is little evidence as to what took place when the rolls were stowed at Georgetown but it was the uniform practice of petitioner's longshoremen to stow such cargo under the immediate direction of their hatch foremen, while respondent's cargo officers supervised the loading of the entire ship and had authority to reject unsafe stowage.

A few days later, on July 20, 1949, in navigable water at a pier in Brooklyn, New York, petitioner engaged in unloading these rolls. While one of petitioner's Brooklyn longshoremen, Frank Palazzolo, was working in Hatch No. 3, one roll, weighing about 3,200 pounds, broke loose from the others, struck him violently and severely injured his left leg. There is no evidence that he was negligent. On the other hand, it appears that the rolls in Hatch No. 3 had been insufficiently secured when stowed by petitioner in Georgetown. This is established by the absence of proper wedges and dunnage holding the rolls in place at the time of the accident.

Petitioner's insurance carrier under the Longshoremen's Act paid Palazzolo $2,940 compensation and furnished him medical services costing $9,857.36, all without any formal award by the Deputy Commissioner. As permitted by § 33 of that Act, Palazzolo sued the respondent-shipowner in the Supreme Court of New York.[2] He claimed that the unsafe stowage of the cargo, which caused his injuries, established either the unseaworthiness of the ship, or the shipowner's negligence in failing to furnish him with a safe place to work, or both. The shipowner removed the case to the United States District Court for the Eastern District of New York and filed a third-party complaint against petitioner. By stipulation, Palazzolo's case against the shipowner was tried to a jury, which returned a verdict in his favor for $75,000.

---

[2] "SEC. 33. (a) If on account of a disability or death for which compensation is payable under this Act the person entitled to such compensation determines that some person other than the employer is liable in damages, he may elect, by giving notice to the deputy commissioner in such manner as the Secretary [of Labor] may provide, to receive such compensation or to recover damages against such third person.

"(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person.

.        .        .        .        .

"(i) Where the employer is insured and the insurance carrier has assumed the payment of the compensation, the insurance carrier shall be subrogated to all the rights of the employer under this section." 44 Stat. 1440, as amended, 33 U. S. C. § 933 (a) (b) and (i).

For procedure to secure an award of compensation, see § 19, 44 Stat. 1435–1436, as amended, 33 U. S. C. § 919.

A longshoreman, after accepting compensation payments from his employer without an award, may sue a third-party tortfeasor for his injuries. *American Stevedores* v. *Porello*, 330 U. S. 446, 454–456. If the facts permit, he may recover from the shipowner for unseaworthiness, or for negligence, or both. *Pope & Talbot* v. *Hawn*, 346 U. S. 406.

The District Court entered judgment on the jury verdict. From the above sum, petitioner's insurance carrier was to be reimbursed for the $12,797.36 it had advanced because of Palazzolo's injuries.

Also by stipulation, the shipowner's third-party complaint was submitted on the same record to the judge who had presided over Palazzolo's case. He dismissed the complaint. 111 F. Supp. 505. The Court of Appeals affirmed Palazzolo's judgment but reversed the dismissal of the third-party complaint and directed that judgment be entered for the shipowner. 211 F. 2d 277. Petitioner, the stevedoring contractor, contends that the order reversing the dismissal of the impleader suit is erroneous. Because of the wide application of the case and the conflicting views that have been expressed on the issues, we granted certiorari. 348 U. S. 813. The United States filed a brief as *amicus curiae* in support of the shipowner and took part in the oral argument. 348 U. S. 948. The judgment was affirmed by an equally divided Court, 349 U. S. 901, but the case was restored to the docket for reargument before a full Court, 349 U. S. 926.

1. *The first question is whether the Longshoremen's Compensation Act precludes the assertion by a shipowner of a stevedoring contractor's liability to it, where the contractor is also the employer of the injured longshoreman.*

Neither court below discussed this question, although petitioner presented it to them. Petitioner's argument is based upon the following provision in the Longshoremen's and Harbor Workers' Compensation Act:

"Sec. 5. The *liability of an employer* prescribed in section 4 [for compensation] *shall be exclusive and in place of all other liability of such employer to the employee,* his legal representative, husband or wife,

parents, dependents, next of kin, *and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death,* except that if an employer fails to secure payment of compensation as required by this Act, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this Act, or to maintain an action at law or in admiralty for damages on account of such injury or death. . . ." (Emphasis supplied.) 44 Stat. 1426, 33 U. S. C. § 905.

The obvious purpose of this provision is to make the statutory liability of an employer to contribute to its employee's compensation the exclusive liability *of such employer to its employee, or to anyone* claiming under or through such employee, *on account of his injury or death arising out of that employment.* In return, the employee, and those claiming under or through him, are given a substantial *quid pro quo* in the form of an assured compensation, regardless of fault, as a substitute for their excluded claims. On the other hand, the Act prescribes no *quid pro quo* for a shipowner that is compelled to pay a judgment obtained against it for the full amount of a longshoreman's damages.[3]

Section 5 of the Act expressly excludes the liability of the employer "to the employee," or others, entitled to recover "on account of such [employee's] injury or death." Therefore, in the instant case, it excludes the

---

[3] In the instant case, the *stevedoring contractor,* however, has received a contractual *quid pro quo* from the shipowner for assuming responsibility for the proper performance of all of the latter's stevedoring requirements, including the discharge of foreseeable damages resulting to the shipowner from the contractor's improper performance of those requirements. See Restatement, Contracts, §§ 334, 330; *Bethlehem Shipbuilding Corp.* v. *Gutradt Co.,* 10 F. 2d 769; *Mowbray* v. *Merryweather,* [1895] 2 Q. B. 640 (C. A.).

liability of the stevedoring contractor to its longshore-man, and to his kin, for damages on account of the long-shoreman's injuries. At the same time, however, § 5 expressly preserves to each employee a right to recover damages against third persons.[4] It thus preserves the right, which Palazzolo has exercised, to recover damages from the shipowner in the present case. The Act nowhere expressly excludes or limits a shipowner's right, as a third person, to insure itself against such a liability either by a bond of indemnity, or the contractor's own agreement to save the shipowner harmless. Petitioner's agreement in the instant case amounts to the latter for, as will be shown, it is a contractual undertaking to stow the cargo "with reasonable safety" and thus to save the shipowner harm-less from petitioner's failure to do so.

In the face of a formal bond of indemnity this statute clearly does not cut off a shipowner's right to recover from a bonding company the reimbursement that the indemnitor, for good consideration, has expressly con-tracted to pay. Such a liability springs from an inde-pendent contractual right. It is not an action by or on behalf of the employee and it is not one to recover dam-ages "on account of" an employee's "injury or death." It is a simple action to recover, under a voluntary and self-sufficient contract, a sum measured by foreseeable damages occasioned to the shipowner by the injury or death of a longshoreman on its ship.

A like result occurs where a shipowner sues, for breach of warranty, a supplier of defective ship's gear that has caused injury or death to a longshoreman using it in the course of his employment on shipboard. And a like liability for breach of contract accrues to a shipowner against a stevedoring contractor in any instance when the

---

[4] See § 33 (a) in note 2, *supra*.

latter's improper stowage of cargo causes an injury on shipboard to some one other than one of its employees. The coincidence that the loading contractor here happens to be the employer of the injured longshoreman makes no difference in principle. While the Compensation Act protects a stevedoring contractor from actions brought against it by its employee on account of the contractor's tortious conduct causing injury to the employee, the contractor has no logical ground for relief from the full consequences of its independent contractual obligation, voluntarily assumed to the shipowner, to load the cargo properly. See *American Stevedores* v. *Porello*, 330 U. S. 446; *Crawford* v. *Pope & Talbot*, 206 F. 2d 784, 792–793; *Brown* v. *American-Hawaiian S. S. Co.*, 211 F. 2d 16; *Rich* v. *United States*, 177 F. 2d 688; *United States* v. *Arrow Stevedoring Co.*, 175 F. 2d 329.[5]

The shipowner's action here is not founded upon a tort or upon any duty which the stevedoring contractor owes to its employee. The third-party complaint is grounded upon the contractor's breach of its purely consensual obli-

---

[5] There is nothing in the legislative history of the Compensation Act calling for a contrary interpretation. Our interpretation of that Act is supported also by that of the New York Workmen's Compensation Act upon which it is modeled. The latter Act provides that the— "liability of an employer [for compensation] prescribed by the last preceding section shall be exclusive and in place of any other liability whatsoever, to such employee, his personal representatives, husband, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise on account of such injury or death . . . ." McKinney's N. Y. Laws, Workmen's Compensation Law, § 11.

See *Westchester Lighting Co.* v. *Westchester County Corp.*, 278 N. Y. 175, 15 N. E. 2d 567. Other state courts have reached comparable results as to exclusive liability clauses in their respective Compensation Acts. 2 Larson, Workmen's Compensation Law, §§ 76.00–76.44 (a).

gation *owing to the shipowner* to stow the cargo in a reasonably safe manner. Accordingly, the shipowner's action for indemnity on that basis is not barred by the Compensation Act.[6]

2. *The other question is whether, in the absence of an express agreement of indemnity, a stevedoring contractor is obligated to reimburse a shipowner for damages caused it by the contractor's improper stowage of cargo.*

The answer to this is found in the precise ground of the shipowner's action. By hypothesis, its action is not based on a bond of indemnity such as it may purchase by way of insurance, or may require of its stevedoring contractor, and which expressly undertakes to save the shipowner harmless. If the shipowner did hold such an express agreement of indemnity here, it is not disputed that it would be enforceable against the indemnitor. On the other hand, the shipowner's action for indemnity here is not based merely on the ground that the shipowner and contractor each is responsible in some related degree for the tortious stowage of cargo that caused injury to Palazzolo. Such an action, brought without reliance

---

[6] We do not reach the issue of the exclusionary effect of the Compensation Act upon a right of action of a shipowner under comparable circumstances without reliance upon an indemnity or service agreement of a stevedoring contractor. See *Brown* v. *American-Hawaiian S. S. Co.*, 211 F. 2d 16, 18; *States S. S. Co.* v. *Rothschild International Stevedoring Co.*, 205 F. 2d 253; *Slattery* v. *Marra Bros.*, 186 F. 2d 134 (N. J. statute) ; *United States* v. *Rothschild International Stevedoring Co.*, 183 F. 2d 181; *American Mutual Liability Ins. Co.* v. *Matthews*, 182 F. 2d 322; *American District Telegraph Co.* v. *Kittleson*, 179 F. 2d 946; *McFall* v. *Compagnie Maritime Belge*, 304 N. Y. 314, 107 N. E. 2d 463. And see generally, Weinstock, The Employer's Duty to Indemnify Shipowners for Damages Recovered by Harbor Workers, 103 U. of Pa. L. Rev. 321 (1954).

upon contractual undertakings, would present the bald question whether the stevedoring contractor or the shipowner, because of their respective responsibilities for the unsafe stowage, should bear the ultimate burden of the injured longshoreman's judgment. That question has been widely discussed elsewhere in terms of the relative responsibility of the parties for the tort, and those discussions have dealt with concepts of primary and secondary or active and passive tortious conduct.[7] Because respondent in the instant case relies entirely upon petitioner's contractual obligation, we do not meet the question of a noncontractual right of indemnity or of the relation of the Compensation Act to such a right.

The shipowner's claim here also is not a claim for contribution from a joint tortfeasor. Consequently, the considerations which led to the decision in *Halcyon Lines* v. *Haenn Ship Corp.*, 342 U. S. 282, are not applicable. See *American Mutual Liability Ins. Co.* v. *Matthews,* 182 F. 2d 322.

The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's

---

[7] See *Brown* v. *American-Hawaiian S. S. Co., supra; Crawford* v. *Pope & Talbot, supra; McFall* v. *Compagnie Maritime Belge, supra;* Weinstock, The Employer's Duty to Indemnify Shipowners for Damages Recovered by Harbor Workers, *supra.*

warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service.[8]

The Court of Appeals has stated that the liability of petitioner in this case is for the performance of its obligation to stow the rolls on board ship "in a reasonably safe manner." 211 F. 2d, at 279. That court also has affirmed the decision of the District Court which was based upon the verdict of the jury that petitioner's improper stowage of the rolls produced either the unseaworthiness of the ship, or the hazardous working condition which is the basis for the shipowner's liability to Palazzolo.

Petitioner suggests that, because the shipowner had an obligation to supervise the stowage and had a right to reject unsafe stowage of the cargo and did not do so, it now should be barred from recovery from the stevedoring contractor of any damage caused by that contractor's uncorrected failure to stow the rolls "in a reasonably safe manner." Accepting the facts and obligations as above stated, the shipowner's present claim against the contractor should not thereby be defeated. Whatever may have been the respective obligations of the stevedoring contractor and of the shipowner to the injured longshoreman for proper stowage of the cargo, it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure to discover and correct the contractor's own breach

---

[8] See *Union Stock Yards Co.* v. *Chicago, B. & Q. R. Co.*, 196 U. S. 217; *Brown* v. *American-Hawaiian S. S. Co., supra; Crawford* v. *Pope & Talbot, supra,* at 792–793; *American Mutual Liability Ins. Co.* v. *Matthews, supra,* at 323–325; *Rich* v. *United States, supra; Bethlehem Shipbuilding Corp.* v. *Gutradt Co., supra; Mowbray* v. *Merryweather, supra; Dunn* v. *Uvalde Asphalt Paving Co.,* 175 N. Y. 214, 67 N. E. 439.

of warranty as a defense. Respondent's failure to discover and correct petitioner's own breach of contract cannot here excuse that breach.[9]

The judgment of the Court of Appeals, accordingly, is

*Affirmed.*

MR. JUSTICE BLACK, with whom THE CHIEF JUSTICE, MR. JUSTICE DOUGLAS, and MR. JUSTICE CLARK concur, dissenting.

The petitioner, Ryan Stevedoring Company, is an employer subject to the Longshoremen's and Harbor Workers' Compensation Act.[1] Section 5 of that Act completely abolished all rights of longshoremen to sue their employers for injuries resulting from negligence of the employer or his employees. The Act substituted for old tort remedies a prescribed schedule of compensation for employees' injuries or death which was declared to be "exclusive and in place of all other liability of such employer to the employee . . . and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . ." I think the Court's holding today breaks promises the Act made both to employers and employees. My view requires a more detailed statement of the facts and circumstances of this case than appears in the Court's opinion.

Palazzolo, an employee of Ryan, the stevedore, was injured while unloading cargo on a ship owned by the respondent, Pan-Atlantic Steamship Corporation. As authorized by § 33 Palazzolo elected to sue the shipowner rather than accept a compensation award. In his com-

---

[9] See *Berti* v. *Compagnie de Navigation Cyprien Fabre*, 213 F. 2d 397; *Hastorf Contracting Co.* v. *Ocean Transportation Corp.*, 4 F. 2d 583, aff'd, 4 F. 2d 584; *Mowbray* v. *Merryweather, supra; Boston Woven Hose Co.* v. *Kendall*, 178 Mass. 232, 59 N. E. 657.

[1] 44 Stat. 1424, as amended, 33 U. S. C. § 901.

plaint he charged that his injury was solely due to the negligent manner in which a number of heavy rolls of paper pulp had been stowed, or to the resulting unseaworthiness of the vessel. One of these rolls weighing about 3,200 pounds had broken loose from its position and seriously injured Palazzolo. The shipowner answered denying the allegations of negligence and unseaworthiness. At the same time the shipowner filed a complaint of its own against Ryan, the stevedore, alleging that any injury Palazzolo had received was solely attributable to the negligent manner in which the stevedore's employees had stowed the rolls of pulp. On this basis the shipowner asked the court to compel the stevedore to reimburse the shipowner for any judgment Palazzolo might obtain against the shipowner. Palazzolo's case against the shipowner was submitted to a jury; the shipowner's claim for reimbursement by the stevedore was tried by the judge largely on the same evidence and issues submitted to the jury. The facts in summary were these:

The stevedore's employees loaded the rolls of pulp in Georgetown, South Carolina, and four or five days later different employees of the same stevedore unloaded them in New York. This was pursuant to a general contract under which Ryan had agreed to perform the shipowner's stevedoring services along the Atlantic and Gulf coasts. The terms of the contract were set out in written memorandums prepared by the shipowner and agreed to by the stevedore. These memorandums contained a simple agreement to do the stevedoring for an agreed compensation plus, in some circumstances, cost of the stevedore's insurance. There was nothing further from which it could possibly be inferred that Ryan would be under a duty to indemnify the shipowner for losses resulting from any negligent stowage by Ryan's employees. To prevent injuries to cargo, crew and longshoremen, it

is necessary and customary to put some kind of props or supports under or against the heavy pulp rolls to keep them stationary until such time as they are unloaded. Some witnesses testified that a thick, heavy, strong piece of lumber cut into a special wedge shape, called a "chock," is a satisfactory kind of support under the rolls. Failure to use "chocks" may, as testified by one of the ship's officers, permit the rolls to run "rampant." Other witnesses testified that in addition to chocking, safety required that wooden floors be placed between the layers of rolls. All agreed, however, that indiscriminate scraps of wood called "dunnage" are wholly inadequate supports. All but one witness who testified swore that the roll that broke loose and injured Palazzolo in New York had nothing but "dunnage" under or against it. The lone exception was the ship's officer who swore that he saw wedges under the rolls in New York. No one testified that wooden floors were used or that they were made available by the shipowner. There was testimony that this shipowner never used chocks *or* wooden flooring and that in New York the longshoremen had looked for chocks but none were to be found on the ship. An officer of the shipowner testified that he was on the ship in Georgetown, South Carolina, while it was being loaded; that it was his primary duty to watch and see that the rolls were properly stowed and chocked; that he did watch; that chocks were available as part of the ship's "gear"; that he saw chocks, not dunnage, put under the rolls; that had any attempt been made to stow the rolls without using chocks he would have tried to stop the stevedore; that "the stevedores and the chief officer and the mate on watch generally cooperate and work together in the stowage in the overall stowage of the cargo." Thus the uncontradicted testimony of the ship's officer was sufficient to support a finding that he as a representative of the ship actively joined in stowing the rolls in the way in

which they arrived at New York. And other evidence was sufficient to support a finding that the cargo arrived in New York unprotected by chocks.

These issues were properly submitted to the jury by the judge in his charge. He told the jury that it could not find the ship unseaworthy on account of the way in which the goods were unloaded in New York. The issue thus revolved around stowage in South Carolina which was actively supervised by the ship's officers. The court submitted to the jury the questions, among others, as to whether the ship had available for use proper equipment to stow these dangerous rolls and whether the ship's officers were guilty of negligent loading and stowage in South Carolina. The jury gave Palazzolo a verdict for $75,000. The trial judge found in deciding the shipowner's indemnity claim against the stevedore that the ship's officer present at the stowage "did not properly perform his admitted duty to supervise the safe and careful loading of the vessel," although he had "authority to remedy the condition or halt the work." 111 F. Supp. 505, 507. He concluded from this and other findings [2] that the ship and the stevedore were "joint-tortfeasors" and therefore declined to order the stevedore to reimburse the shipowner.

The Court of Appeals held that there was adequate evidence to support the jury's finding that the shipowner was negligent and that the ship was unseaworthy because of the defectively stowed rolls. That court nevertheless held that the stevedore had to reimburse the shipowner for its loss despite the findings of the jury and the trial court that the loss occurred because of the shipowner's

---

[2] The trial court also found that the ship's officer "in the exercise of reasonable care should have discovered and corrected" the defective stowage conditions. Had this been the only ship's negligence found it might be material in considering the question of common-law indemnity. But this Court relies on contractual indemnity.

negligence.[3]  The Court of Appeals justified imposing payment of the $75,000 verdict on the stevedore on the ground that Palazzolo's injury was due to the "sole," "primary," or "active" negligence of the stevedore's employees.  But the court's suggestion that the injury could have been due to the "sole" negligence of the stevedore is answered by the part of the court's opinion holding that there was adequate evidence to support the jury and trial court findings that the shipowner itself was negligent.  Use of the words "primary" and "active" seems to indicate that the Court of Appeals believed it should look at this cold record and find for itself whether the stevedore's employees or the ship's employees were guilty of this type of negligence.  I do not agree that the Court of Appeals should make such findings.  And if the Court of Appeals' cryptic statements about "sole," "active" and "primary" can be considered as upsetting any of the findings of the trial court, I think the Court of Appeals' action should be set aside as clearly erroneous.  *McAllister* v. *United States,* 348 U. S. 19.

I have set out the evidence in some detail because I think it shows almost beyond doubt that this stevedoring company is being required to pay a $75,000 verdict "on account of" injuries to an employee received in the line of that employee's duties.  This is at least $60,000 more than it would have to pay under the Longshoremen's

---

[3] Even though the question of unseaworthiness was also submitted to the jury, it depended wholly upon whether there was negligent stowage.  Under the undisputed testimony of the ship's officer the jury and judge had to find that the shipowner was guilty of negligence if the stevedore was.  Moreover, if the shipowner failed to provide the proper gear in the way of chocks or lumber, the shipowner was guilty of negligence whether the stevedore was or not.  In this case, therefore, the shipowner's negligence and unseaworthiness were one and the same thing.  And if the shipowner failed to supply needed gear in the way of chocks or lumber, it would have been permissible to find that this was the "sole" cause of Palazzolo's injuries.

Act. That Act was revolutionary in its field. It took away from longshoremen the right to sue their employers for negligence and substituted a fixed schedule of compensation for injuries regardless of fault. Many workers and employers opposed the compensation scheme. The workers deplored loss of their chance to get big tort verdicts. But Congress thought it best to give them a more certain and less expensive recovery, even though far less in amount than some tort recoveries might be. Many employers preferred to take their chance on defeating employees' damage suits under the old tort system. The idea of "liability without fault" was abhorrent to them. Congress weighed the conflicting interests of employers and employees and struck what was considered to be a fair and constitutional balance.[4] Injured employees thereby lost their chance to get large tort verdicts against their employers, but gained the right to get a sure though frequently a more modest recovery. However, § 33 did leave employees a chance to recover extra tort damages from third persons who negligently injured them. And while Congress imposed absolute liability on employers, they were also accorded counterbalancing advantages. They were no longer to be subjected to the hazards of large tort verdicts. Under no circumstances were they to be held liable to their own employees for more than the compensation clearly fixed in the Act. Thus employers were given every reason to believe they could buy their insurance and make other business arrangements on the basis of the limited Compensation Act liability. More than that, § 33 of the Act also provides that for compensation paid an employee an employer shall himself be reimbursed or indemnified out of any money collected as a result of an employee's claim for negligent injury by a

---

[4] See *Crowell* v. *Benson*, 285 U. S. 22, 37–42; *New York Central R. Co.* v. *White*, 243 U. S. 188, 201–202. Cf. *Ives* v. *South Buffalo R. Co.*, 201 N. Y. 271, 94 N. E. 431.

third person. But the end result here is that this employer is actually mulcted in damages because its employee successfully prosecuted a third-party action. Liability is thus imposed because of the negligence of the employer's other employees. This the Act forbids. Whether called "common-law indemnity," "contribution," "subrogation," or any other name, the result is precisely the same. The employer has to pay more "on account of" an injury to his employee than Congress said he should.

I agree, of course, that if the employer here had made a contract, oral or written, agreeing to hold this shipowner harmless or to indemnify the shipowner against liability for injuries to petitioner's employees caused by the shipowner's negligence in whole or in part, the contract would have been valid and indemnity could have been obtained. For the Longshoremen's Act does not forbid employers under it to make independent agreements to indemnify others. But I think there is not the slightest support in this record for a finding that any such contract was made. No such allegation was made in the shipowner's complaint. And the shipowner's counsel was careful to stipulate during the course of the trial that his action was not based on a contract but on common-law indemnity.[5] I recognize that common-law indemnity may

[5] "Mr. Behrens [counsel for shipowner]: This right of indemnity alleged by Pan-Atlantic is a right of common-law indemnity rather than a contractual provision. My question is how to get such facts before your Honor.

"Your Honor, there was a motion for summary judgment in this case by Ryan, to which was annexed the exchange of correspondence between Ryan and Pan-Atlantic, which is a contract.

"Now, the question is whether those documents should now be put in evidence before your Honor, or whether your Honor will infer from the absence of any proof on the subject that there was no contractual indemnity.

"Mr. Schwartz [counsel for Ryan]: I think we can agree and stip-

sometimes arise where two people commit a tort or wrong which hurts the same person. As between wrongdoers the courts will under some circumstances impose the total liability on the "primary" or "active" wrongdoer, apparently meaning the wrongdoer the court deems to be the most negligent. But indemnity so imposed is plainly "on account of" the negligence of the wrongdoer or his employees. The Act expressly forbids such a recovery by "anyone" from a stevedoring company "on account" of an injury to one of its longshoremen. Plainly, common-law indemnity should not be used to fasten such a liability on a stevedoring company. I suppose it is for this reason that the Court purports to find an actual contract to indemnify and thus decides the case on an issue neither presented in the complaint nor considered by the trial court.

A genuine contract as distinguished from a liability imposed by law, sometimes called a "quasi-contract," requires mutual agreement of the parties. It is for this reason that the courts have frequently said that the cardinal rule in the interpretation of contracts is that the intention of the parties should be ascertained and enforced.[6] And courts do not ordinarily stretch language in order to

---

ulate between us that whatever contractual arrangement was made between Pan-Atlantic and Ryan, did not contain any expressed provision for indemnity, and it is Mr. Behrens' position in this matter that his claim over is based solely upon an implied right of indemnity, as implied in law.

"Mr. Behrens: That is correct.

.          .          .          .          .

"Mr. Schwartz: I will stipulate that there is no contractual provision for indemnity.

"Mr. Behrens: And I will so stipulate, if that is satisfactory to your Honor.

"The Court: Very well."

[6] See, e. g., *Mauran* v. *Bullus*, 16 Pet. 528, 534; *Canal Co.* v. *Hill*, 15 Wall. 94, 99–100.

find that one person has agreed to indemnify another when the latter negligently hurts someone.[7] Special caution should be used in construing contracts so as to impose indemnity liability on companies not engaged in the business of writing indemnity insurance.

I think there is not a shred of evidence to support the Court's inference that this stevedore voluntarily agreed to give up the limited liability which the Longshoremen's Act was deliberately designed to afford. The Court finds nothing to support such a conclusion except that the stevedore agreed to do a stevedoring job. From that the Court implies that it was to do a good workmanlike job. From there it takes the next step—which should be more difficult than it appears to be—and says that the stevedoring company also agreed to give up its immunity under the Act and pay any judgments that might be rendered in favor of the stevedore's employees against the shipowner for its negligence. The precise scope of the indemnity which the Court finds the stevedore intended to assume is left in doubt. Are we to assume that the stevedore agreed to an unlimited liability for indemnity without regard to the comparative or qualitative proportions of negligence as between its employees and the employees of the shipowner? Are we even to assume that the stevedore deliberately and intentionally agreed to indemnify the shipowner upon a court's finding that the stevedore's negligence was the "sole," "primary," or "active" cause of injury? Findings of fact based on these standards are never easy. And in efforts to formulate a common-law indemnity remedy courts themselves have groped considerably in trying to give meaning to the terms "primary" and "active." Is an understanding of the different nuances of "sole," "primary" and "active" to be attributed to stevedoring companies in judicial rewriting of

[7] See, e. g., cases collected in Note, 175 A. L. R. 8, 29–32.

work contracts so as to make them indemnity contracts? Surely before this Court determines the existence of a contract and the scope of its coverage the case should be sent back to the trial court so that these issues could be determined after a full hearing on the facts. The issues were not tried in the District Court and not tried in the Court of Appeals. The issues have never been tried. In *American Stevedores, Inc.* v. *Porello,* 330 U. S. 446, we remanded a case to the trial court for a hearing on evidence as to the scope of a contract of indemnity even though it was written. Here there is not even an oral contract to indemnify. Before creating a contract it might be appropriate to follow the course we did in *Porello.* Or is the Court rejecting this phase of *Porello?* Cf. *Halcyon Lines* v. *Haenn Ship Ceiling & Refitting Corp.,* 342 U. S. 282, 284.

Finally, the Court's action here not only deprives the employer of his limited liability, it makes the right of employees to recover damages from third parties a barren promise. Section 33 of the Act provides two ways for an injured employee to obtain damages from a negligent third person: (1) The employee may elect to waive statutory compensation from his employer and sue the negligent third person directly for damages. (2) If the employee accepts a compensation award the employer may sue the third person as statutory assignee of the employee's claim, but all the employer recovers in excess of the amount of the compensation award must be paid over to the employee. Palazzolo was able to make an election and bring his own suit because his employer was financially interested in the outcome of his case and therefore advanced money to Palazzolo to sustain him during his injury until his case against the third party could be tried. The Court takes away all incentive for employers to follow this course in the future. Hereafter stevedoring companies under circumstances like this will

know that it is decidedly to their advantage that no third-party actions be brought. An employer like Ryan will hereafter know that if he or his employee prosecutes a claim against a third party and obtains a judgment for the employee's benefit, every dime of the judgment will have to be paid by the employer himself. Human nature and habits being what they are, employers will not be eager to finance suits against themselves. Injured longshoremen are not ordinarily wealthy enough to support themselves without work pending the trial of lengthy lawsuits. Yet if an employee accepts a compensation award only his employer can bring suit against the third person, and the employer will not be overly anxious to sue himself. It has been suggested that we can expect the courts to protect employees under such circumstances. In other words, the employee who has accepted compensation must go into court to protect himself against his employer before he goes into court to protect his claim against a third party who has negligently injured him. I cannot believe Congress would have given employers such complete control over these suits if it had thought the employers could be held liable for everything recovered. The actual effect of the Court's holding is this: The employer as an assignee of an employee's claim will know that if he wins a lawsuit, he loses a lawsuit. This knowledge will not give him a yearning anxiety to file suit. Even though he yields to the call of duty and files the lawsuit, he might not be exceedingly anxious to write a good complaint. His other pleadings might not be all that a zealous lawyer would desire. Although the employer must pay the judgment, his will be the opening argument to the jury. And when the last word is said in the closing argument, it will be made by counsel who knows that if he persuades the jury to give his client a verdict his client will have to pay it. Counsel will also know that if he happens to lose the case his client will

be the winner. Such is the state of affairs brought about by the Court's holding that this employer intended to make a contract which would subject him to the very liability that Congress had abolished.

There has been considerable disagreement in this Court and among other courts about three of our recent holdings, *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85; *Halcyon Lines* v. *Haenn Ship Ceiling & Refitting Corp.,* 342 U. S. 282; and *Pope & Talbot, Inc.* v. *Hawn,* 346 U. S. 406. In each of these cases a worker in the same position as Palazzolo sued a shipowner alleging negligence and unseaworthiness. Judgments were obtained against the shipowners. We held in the *Halcyon* case that the shipowner could not under the common-law doctrine of "contribution" force injured employees' employers to pay part of the judgment against the shipowner. The *Sieracki* and *Halcyon* cases were reaffirmed in *Pope & Talbot.* In that case we refused to permit a shipowner to shift part of his loss to the injured person's employer on his argument that the employer, who was under the Longshoremen's Act, negligently contributed to the injury. We rejected the contention on the ground that if accepted it "would frustrate this [Act's] purpose to protect employers who are subjected to absolute liability by the Act." 346 U. S., at 412. The Court's opinion today provides a way under which by simple change of words and remedial formulas the results reached in our three former cases can be undermined. Employees like Sieracki and Palazzolo will find it practically impossible to get their cases for injuries against third persons tried in a court. And a shipowner who wants to shift liability wholly to a stevedoring company can do so by a very simple method. He can allege that the stevedoring company intentionally made a contract agreeing to indemnify him under circumstances like those in this case; that allegation will be automatically proved by simply establishing the fact that

the stevedoring company contracted to do some work on the ship; the result will be that the employer is wholly deprived of the protection of limited liability which the Act was intended to provide. And while this will be accomplished under the name of "contract," it will really be achieved because the Court has announced as an absolute principle of law that without regard to whether a stevedoring company intends to agree to indemnify, it has so agreed if it agrees to do a job. Thus by indirection rights of longshoremen and their employers recognized by this Court in *Sieracki, Halcyon,* and *Pope & Talbot* are taken away. In effect the *Sieracki* case is rejected.

I would reverse this case.