Daniel SEAWRIGHT, Plaintiff,

v.

A. GARCIA Y CIA, Ltda., Defendant and
Third Party Plaintiff,
Jarka Corporation of Philadelphia,
Third Party Defendant.
Defendant.

Civ. A. No. 14643.

United States District Court
E. D. Pennsylvania.

March 13, 1956.

Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiff.

Kruseh, Evans & Shaw, Philadelphia, Pa., for defendant and third party plaintiff.

Beechwood & Lovitt, Philadelphia, Pa., for third party defendant.

FOLLMER, District Judge.

This is one of seven actions by longshoremen to recover for personal injuries sustained aboard the S.S. Atlantico in the Port of Philadelphia on February 14, 1952. Plaintiffs filed suits against A. Garcia y Cia, Ltda., defendant owner of vessel. Defendant by third party complaint filed suit against Jarka Corporation of Philadelphia, the stevedoring company and employer of plaintiffs, as third party defendant in each of the actions.

The pertinent facts of the case as developed by the testimony at the trial are as follows: Under date of January 17, 1952, Jarka entered into a written contract with Garcia by which Jarka agreed, subject to the terms and conditions therein, to stevedore vessels of Garcia effective October 1, 1951 to September 30, 1952; in furtherance thereof, on or about February 14, 1952, Jarka through its employees, the plaintiff longshoremen, undertook to discharge Garcia's S.S. Atlantico of its cargo consisting of 100 pound sacks of sugar while the ship was in navigable waters and moored to Pier 27, North Philadelphia, Pennsylvania; at or about 5:45 o'clock p. m., on the day in question, the seven plaintiff longshoremen were working at the discharging operation in the No. 2 hold of the Atlantico when a large portion of the cargo of sugar collapsed and fell, burying plaintiffs under the sugar and causing the injuries complained of.

At the conclusion of the testimony there occurred the following colloquy between Mr. Beechwood, Attorney for Jarka, Mr. Alspach, Attorney for Garcia, and the Court:

"Mr. Beechwood: If Your Honor please, I think Mr. Alspach should state on this record whatever his position is with respect to that con-

tract. If he doesn't say that we have violated any of the express provisions he should now state that he is not claiming that we violated any of the express provisions.

"The Court: Yes, I think so too.

"Mr. Alspach: I will state for the record at this time, if the Court please, that in so far as the evidence in this case shows the third-party defendant, Jarka Corporation of Philadelphia, has not in our judgment been shown to have breached or violated any specific printed provision of this contract. But so that the record is complete, it is our position that it is Jarka's duty as a contractor in furnishing the men and the services which were used in this instance, they were under an obligation to us, as any contractor, to furnish competent and adequate supervision, to proceed about its work in a safe, careful workmanlike manner; it was under an obligation to us to see to it that its own men were not exposed to any danger or hazard, and we maintain that the evidence here clearly establishes that Jarka has failed in this case to meet its obligations which I have outlined, which are a part of this contract for services even though they are not written into the contract itself; that they are obligations resting upon Jarka by operation of law because they stood in the relation of contractor and employer of a contractor as to us.

"The Court: Doesn't that place it in the direct category then of distinction between tort and contractual liability?

"Mr. Alspach: I do not believe it does, Your Honor. I believe that the liability of Jarka can be predicated here upon either theory.

"I think that the employer, and by employer here I am referring to a contractor as distinguished from the contractor's men, owes us as the owner and possessor of the prem-ises, and as a party who engages him, a duty to proceed about his work in a safe, careful and workmanlike manner and not to expose his employees to any hazard. That on the tort side clearly indicates that there was a breach by Jarka in this case. And there are other incidents in which I think it can well be argued that there was a violation of a tort, that there was a tort committed by Jarka here, which I shall not belabor, Your Honor, herewith at the moment.

"But to answer Your Honor's question on the contractual side, what I have said before I think holds true that by reason of the contract itself certain obligations which I have outlined before rested upon Jarka, and that Jarka under the evidence has breached those obligations."

In answer to interrogatories submitted by the Court the jury found as follows:

1. No unseaworthiness on the part of the Atlantico which was a contributing factor in bringing about the accident.

2. That there was negligence on the part of defendant, Garcia, which was a contributing factor in bringing about the accident.

3. That each of the several plaintiff longshoremen were contributorily negligent in the amount of 2%.

The jury returned a verdict in favor of plaintiff, Daniel Seawright, in the sum of $25,000. It was agreed by counsel that judgment should be entered in the sum of $24,500.

Prior to trial it was agreed that the trial should proceed on the question of liability only in relation to all of the plaintiffs and of damages in relation only to plaintiff, Daniel Seawright.

The matter is now before the Court on defendant Garcia's motions, (1) to vacate and set aside the dismissal of the third party complaint, (2) to enter judgment in its favor and against the third

party defendant, Jarka Corporation of Philadelphia, or in the alternative (3) to grant a new trial as between the defendant and the third party defendant.

Since the above trial, to wit, on January 9, 1956, the Supreme Court handed down its 5 to 4 opinion in Ryan Stevedoring Co., Inc., v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232, 234. The majority opinion held that the facts of that case presented two questions as to the liability of a stevedoring contractor to reimburse a shipowner for damages paid by the latter to one of the contractor's longshoremen on account of injuries received by him in the course of his employment on shipboard. The Court posed the first question as follows:

"1. The first question is whether the Longshoremen's Compensation Act precludes the assertion by a shipowner of a stevedoring contractor's liability to it, where the contractor is also the employer of the injured longshoreman."

In answer to this question the Court held:

" * * * The Act nowhere expressly excludes or limits a shipowner's right, as a third person, to insure itself against such a liability either by a bond of indemnity, or the contractor's own agreement to save the shipowner harmless. Petitioner's agreement in the instant case amounts to the latter for, as will be shown, it is a contractual undertaking to stow the cargo 'with reasonable safety' and thus to save the shipowner harmless from petitioner's failure to do so."

And then concluded:

"The shipowner's action here is not founded upon a tort or upon any duty which the stevedoring contractor owes to its employee. The third-party complaint is grounded upon the contractor's breach of its purely consensual obligation *owing to the shipowner* to stow the cargo in a reasonably safe manner. Ac-cordingly, the shipowner's action for indemnity on that basis is not barred by the Compensation Act."

The factual recital in the last quotation is equally applicable in the instant case except, of course, that here the contractor (Jarka) was engaged in discharging rather than stowing the cargo as in Ryan.

The second question was posed as follows:

"2. The other question is whether, in the absence of an express agreement of indemnity, a stevedoring contractor is obligated to reimburse a shipowner for damages caused it by the contractor's improper stowage of cargo."

After eliminating any consideration of the concepts of primary and secondary or active and passive tortious conduct as well as any question of joint tortfeasorship because the shipowner there relied entirely upon contractor's contractual obligation, the Court then held:

"The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service.

* * * * *

"Petitioner suggests that, because the shipowner had an obligation to supervise the stowage and had a right to reject unsafe stowage of the cargo and did not do so, it now should be barred from recovery from the stevedoring contractor of any damage caused by that contractor's uncorrected failure to stow the rolls 'in a reasonably safe manner.' Accepting the facts and obligations as above stated, the shipowner's present claim against the contractor should not thereby be defeated. Whatever may have been the respective obligations of the stevedoring contractor and of the shipowner to the injured longshoreman for proper stowage of the cargo, it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense. Respondent's failure to discover and correct petitioner's own breach of contract cannot here excuse that breach."

While this Court as to its original ruling finds itself in very respectable company as evidenced by the minority opinion, the majority opinion is the law, and in accordance therewith defendant's motion to vacate and set aside the dismissal of the third party complaints and to grant a new trial as between defendant and third party defendant will be granted.

Defendant's motion to enter judgment in its favor and against Jarka will be denied.

In the Ryan case the contractor both loaded and unloaded the stowage. In the instant case the contractor only unloaded the stowage. The jury in their answers to the interrogatories found no unseaworthiness on the part of the ship, but negligence on the part of the shipowner. Without a further jury determination it is impossible to ascertain at this time whether such negligence on the part of the shipowner constituted pri-

mary or secondary, active or passive tortious conduct, and whichever it is, its relationship to the contractor's method of unloading.