**VITA FOOD PRODUCTS, INC., a corporation, Plaintiff,**

v.

**The E. J. BARTELLS CO., a corporation; Fiberchem, Inc., a corporation; and Witco Chemical Co., a corporation, Defendants.**

**No. C78–583B.**

United States District Court, W. D. Washington.

Nov. 5, 1980.

David Danielson of Lane, Powell, Moss & Miller, Seattle, Wash., for plaintiff.

Richard W. Buchanan of LeGros, Buchanan, Paul & Madden, Seattle, Wash., for defendant, The E. J. Bartells Co.

Thomas V. Harris of Merrick, Hofstedt & Lindsey, Seattle, Wash., for defendant Witco Chemical Corp.

Davis Shaw and Duane Tewell of Tewell, Thorpe & Findley, Seattle, Wash., for defendant Fiberchem, Inc.

## ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BEEKS, Senior District Judge.

This action arose out of a fire which occurred on December 11, 1976 aboard the seafood processor M/V VITA at Dutch Harbor, Alaska. Known to have started in the engine room, the fire is thought to have been caused by the failure of a hydraulic pump line which sprayed hydraulic fluid on an electric motor igniting the fluid. The fire was fed by 1500 gallons of hydraulic fluid stored in a reservoir above the engine room.

The heat from the fire was transmitted through a steel bulkhead into an adjacent hold which was serving as a freezer compartment. The bulkheads in the freezer were insulated with polyurethane foam insulation. The heat from the fire caused this insulation to ignite and the damage done to the VITA and its frozen cargo thereby is the subject of this lawsuit.

The defendants, E. J. Bartells Co., Fiberchem, Inc., and Witco Chemical Co., respectively, installed, distributed and manufactured the foam which ignited on VITA. Plaintiff Vita Food Products, Inc., owner of the vessel, alleges that the defendants are liable for damages caused by the ignition of the foam on five bases: (1) failure to warn; (2) negligence; (3) strict liability; (4) misrepresentation; and (5) breach of express and implied warranties, including the warranty of workmanlike service.[1] Each of the defendants has moved for summary judg-

---

1. Unlike the warranty of seaworthiness, the warranty of workmanlike service was unknown to the general maritime law. The warranty of workmanlike service had its birth in *Ryan Stevedoring Co., Inc. v. Pan Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, 1956 A.M.C. 9 (1956). The warranty was created to ease inequities caused by the rule in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, 1946 A.M.C. 698 (1946), which held a vessel owner liable without fault to injured longshoremen for unseaworthiness even though they are within the provisions of the Longshoremen and Harborworkers Compensation Act (LHCA). *Ryan* allowed the shipowner to shift the burden of liability to the stevedore for such an injury in an action for indemnity by use of the implied warranty of workmanlike service which was said to exist in the service contract between the shipowner and the stevedore. Thus, actions chargeable to the stevedore which breached the warranty would entitle the shipowner, held liable to a *Sieracki*-seaman, to full indemnity from the stevedore-employer.

The 1972 amendment to the LHCA eliminated the *Ryan* indemnity rule by abolishing the action for breach of the warranty of seaworthiness by longshoremen against the vessel owner and by exempting the stevedore from direct or indirect liability.

The applicability of the warranty in situations other than those for which it was devised has never been decided in this circuit. The reasons for which it was contrived do not exist in any of the relationships involved herein, and I have serious doubt with respect to its vitality in such contexts. Although some courts have applied the warranty outside the indemnity area wherein it was evolved, the inequities it was designed to cure do not here exist. Accordingly, upon a renewal of the motions here involved, I will require full and complete briefing as to whether the warranty is now viable and applicable to the situation involved herein.

ment against plaintiff and this court must now decide if such summary treatment is warranted.

Plaintiff contends that defendants' motions are not timely because its discovery is far from complete. In such a case as this, where many factual issues exist and where a number of legal bases of liability have been alleged, full discovery is essential and should be complete before the court considers whether summary judgment is proper. Accordingly, defendants' motions are denied without prejudice to renewal when discovery is fully complete. Plaintiff shall proceed promptly to complete such discovery.