[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON INTERVENING PLAINTIFF'S MOTION TO STRIKECOUNTERCLAIM
This case arises out of the tragic crash of a Life Star helicopter in June of 1992. The pilot brought suit against several members of the Westfield Fire Department claiming their negligence caused the crash. The plaintiff Bremseth was an employee of Rocky Mountain Helicopter Inc. which has intervened through its workers compensation carrier to recover monies it paid the plaintiff under the act CT Page 9108
The motion to strike has been filed by the intervening plaintiff Rocky Mountain against a counterclaim filed against Rocky Mountain by the defendant fire fighters (referred to by the parties as "Westfield").
The motion seeks to strike the counterclaim on the basis that it fails to overcome the exclusive remedy bar of the Workers' Compensation Act in that it fails to set forth facts describing an independent legal relationship as required by Ferryman vGroton 212 Conn. 138, 145 (1989). The issues raised by third party actions against allegedly negligent employers are very difficult. It would be difficult to imagine a more complicated discussion than that of a commentator referred to in Ferryman, see Larsen's Workmens' Compensation Law, Vol. 2B, § 76, pp. 14-720 et seq. The appellate cases in our state dealing with this problem are Ferryman, Farm Bureau Mutual Automobile Ins. Co. vKohn Bros. Tobacco Co. 141 Conn. 539, 544 (1954), Maccarone vHawley 7 Conn. App. 19, 23 (1986), Mable v Bass TransportationCo. 3 Conn. App. 547, 549 (1985), cf Ranta v Bethlehem SteelCorp. 287 F. Sup. 111, 113 (D Conn., 1968) and two older cases cited by appellate cases Mable v Bass Transportation Co.40 Conn. Sup. 253, 258 (1983), Stevens v Polinsky 32 Conn. Sup. 96,102 (1974).
The problem presented by these cases is that as Larsen points out there are competing equities. The employer points out that if the counterclaim is allowed the net result may be that the employer will put a great deal of money in the employee's pocket because of a compensable injury despite a plain statement in the act that the employer's liability is to be limited to compensation payments. Third parties in the position of these Westfield fire fighters argue why should they, strangers to the compensation system, subsidize that system by assuming liabilities that could normally have been shifted to or shared with the employer, see Larsen at § 76.11, page 14-721.
As a starting point to any discussion of a case in this area and a factor that must be kept in mind is the explicit holding inFerryman that "allegations that are based solely upon the `active or primary negligence' versus the passive negligence principles of Kaplan v Merberg Wrecking Corporation, supra (152 Conn.) 415 are simply inadequate to establish the independent relationship that would obviate the operation of the exclusive remedy doctrine in (the employer's) favor", 212 Conn. at page 145. CT Page 9109
Recovery will only be allowed by the third party (Westfield) against the employer (Rocky Mountain) when as the Ferryman court notes the employer has breached an independent duty toward the third party or if there's a basis for finding an implied promise of indemnity. Continuing to quote from Larsen the court goes on to note that the right to indemnity is clear when the obligation springs from an independent contractual relationship. The court cited an landlord-tenant's agreement to hold the third party landlord harmless or a bailee's obligation to indemnify a bailor or contractor's obligation to perform his or her work with due care, Id. pp. 144-145.
At the trial court level the problem is to define the independent duty to the third party in such a way that motions of active versus primary negligence aren't imported into the case which will impose liability on the employer based on the principles set forth in Kaplan v Merberg Wrecking Corp. 152 Conn. 405,415 (1965). And in that regard it must be candidly admitted that insofar as those principles are held not to apply third parties to that extent are being asked to subsidize the workers' compensation system.
Language in Ranta v Bethlehem Steel Corporation supra focuses the problem when it says the worker' compensation act:
 . . ." is not a bar to indemnity where such a right can be predicated on some legal relationship between the third party and employer giving rise to a duty on the part of the employer to the third party which is either contractually or tortiously breached 787 F. Supp. at page 113.
I do not agree with the Rocky Mountain insofar as it claims that the legal relationship necessary to establish the employer's independent duty to the third party (Westfield) must always be based on an independent contractual relationship between the employer and the third party.
Thus where a worker was electrocuted after coming into contact with high voltage wires his estate settled with the owner of the wire system. The power company was allowed to bring an action against the employer because a state statute imposed CT Page 9110 obligations on corporations to take certain precautions when working near high voltage wires and allowed an action by the owner of the high voltage lines against any corporation for losses resulting from its failure to comply with the law, HoustonLight Power Co. v Eller Outdoor Advertising Co. 635 S.W.2d 133
(Tex. 192) I can conceive of other statutorily or judicially conceived creations of employer indemnity.
The important principle is whether the employer has imposed on itself through contract or has imposed on it by statute an independent legal duty to the third party apart from any claim by a third party that the employer should be held responsible for its active negligence in causing the injury to the employee.
Ferryman makes clear that the key concern is preservation of the integrity of the Workers' Compensation Act. Given the insurance coverage costs imposed on employers as a result of the act they should be insulated from liability to third parties for their own negligence even though that negligence contributed to or was the primary factor in causing injury to the employee. However, where the employer has specifically agreed to indemnify third parties in situations such as this, or the law imposes that duty, or an employer has entered into a legal relationship through contract or even the creation of the law which imposes on the employer a duty to indemnify and this duty arises independently of the act and even anteriorly to its passage then the third party's action should be allowed. When an employer knowingly enters into a legal or contractual relationship which traditionally imposed a duty to indemnify and does so apart from any considerations having to do with the act then that employer should not be heard to cry foul and to try to find shelter under the act for liabilities and risks the employer independently assumed. Third parties, prior to any accident or injury to the employee of such an employer would also know and should be held to know the risks they were assuming when they entered into a business or industrial relationship with an employer and its workers, see Ryan Stevedoring Co. v Pan-AtlanticSteamship 350 U.S. 124 (1956) which although it interpreted theLongshoreman's Act is an important case for a contract based duty to a third party before an employer can be held to indemnity.
Thus if an employer is a bailee of the third party bailor's property and causes injury to its employee in using that property for which injury the bailor is sued by the employee then under traditional doctrine the bailee employer should have to indemnify CT Page 9111 the third party bailor, Baugh v Rogers 148 P.2d 633 (Cal, 1944), cf other relationships creating such duty and mentioned inFerryman at 212 Conn. page 145.
The important thing then is not the existence of some kind of relationship between the employer and the third party but the type of relationship that creates a duty to the third party by the employer to reimburse that third party where injuries are caused to an employee and the employee sues the third party.
Keeping these principles in mind it is necessary to examine paragraph 10 of the Westfield counterclaim. That paragraph asserts that "an independent legal relationship" existed between Rocky Mountain and Westfield in one or more of the following ways (a) Rocky Mountain set forth criteria and disseminated its guidelines for participation in the Lifestar Program (b) it held safety courses to train Westfield in all aspects of the Lifestar Program (c) it set forth and disseminated its guidelines for landing zone selection and preparation to Westfield (d) it set forth and disseminated its communication procedures for coordinating emergency medical helicopter transportation between its pilots and members of the fire department (e) it induced, encouraged solicited and/or recruited members of the fire department to participate in the Lifestar Program.
The defendant Westfield seems to confuse the issue of whether some kind of relationship existed between Rocky Mountain and the fire department and/or Westfield with the crucial question whether if some kind of relationship existed it was of such a kind to create a duty on Rocky Mountain's part to indemnify the third party defendant Westfield. I know of no legal concept set forth by the allegations of paragraph 10 which would create such a duty. In fact the allegations sound suspiciously like the underpinnings of or at least the opening salvo in an argument that indemnity should be allowed here because Rocky Mountain was the actively negligent party a la Kaplan. After Ferryman I don't think that will do and tagging such allegations as evidence of an "independent legal relationship" won't serve to defeat the bar to this counterclaim in light of the Workers' Compensation Act.
Rocky Mountain has a right to rely on the protections the act affords it and Westfield, given the type of relationship it had with Rocky Mountain prior to this tragic accident, has no right to expect or rely on the nature of that relationship to provide a basis for the counterclaim it now makes. CT Page 9112
The motion to strike the counterclaim is granted.
Corradino, J.