**MATSON NAVIGATION COMPANY, a corporation, Libelant,**

v.

**UNITED STATES of America, Respondent.**

**No. 27470.**

United States District Court
N. D. California, S. D.
April 23, 1959.

| 3. | Contribution | $202,110.00 |
|---|---|---|
|  | Parental care & guidance | 40,000.00 |
|  | Funeral bill | 877.05 |
|  |  | ———— |
|  | Total | $242,987.05 |

Samuel L. Holmes, Brobeck, Phieger & Harrison, San Francisco, Cal., for libelant.

Robert H. Schnacke, U. S. Atty., San Francisco, Cal., Keith R. Ferguson, Sp. Asst. to Atty. Gen., Graydon S. Staring, Atty., Admiralty and Shipping Section, Dept. of Justice, San Francisco, Cal., for respondent.

GOODMAN, Chief Judge.

This libel arises out of the death of a longshoreman employed by the United States who was killed in a fall while unloading cargo belonging to the United States from a vessel owned and operated by libelant Matson. Because of the longshoreman's status as an employee of the United States, his widow and minor children were awarded compensation pursuant to the Federal Employees' Compensation Act, 5 U.S.C.A. § 751 et seq. Thereafter, the widow and children brought a diversity suit at law against Matson, alleging that the longshoreman's death was proximately caused by the negligence of Matson.[1]

Matson then filed the present libel against the United States pursuant to the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., alleging that the longshoreman's death was caused by the negligence of the United States and praying for a judgment against the United States for the damages Matson might be required to pay in the suit against it and for its fees and expenses incurred in that action.

■ Upon the trial of the lawsuit against Matson, the jury returned a verdict in favor of Matson. Matson now seeks to recover from the United States in this admiralty action the attorneys' fees and expenses it incurred in successfully defending the lawsuit. The United States has moved for summary judgment in its favor. The question tendered by the motion is one of law and does not involve any factual issue.

Matson advances two theories to sustain the imposition of liability upon the United States for the fees and expenses incurred by Matson in defending the suit against it.

■ It first urges that the United States is liable in tort because the fees and expenses incurred by Matson were the reasonably foreseeable result of negligence on the part of the United States which caused the death of the longshoreman. It may be that one who negligently injures another could foresee the possibility that his negligence might precipitate a lawsuit by the injured person against a third party who is mistakenly believed to be legally responsible for the injury. But, in the opinion of the Court, any expense incurred by the third party in demonstrating his non-liability is too remote a consequence of the negligence to be considered a proximate result in the legal sense. If the liability of a negligent tort-feasor were extended to include any expenses incurred by third

---

1. The complaint in this action also included a cause of action, for unseaworthiness which was dismissed prior to trial.

parties in resisting unfounded claims made against them by the person directly harmed by the tort, the liability of the tort-feasor would be limitless. Matson has cited no decision sanctioning such liability nor have we found any.

Matson's second theory of liability is that the United States has a contractual obligation to indemnify it for the fees and expenses it incurred in defending the lawsuit against it. The contractual obligation is claimed to stem from the contract of affreightment entered into by the United States when it shipped its cargo upon Matson's vessel. Article 5(b) of the contract of affreightment provided that: "The loading and discharging of cargo at Army or Navy terminals shall be performed or arranged for by the Government * * *. The Government shall prosecute and complete loading and discharging with reasonable dispatch."

█ Matson claims that the death of the longshoreman occurred because of the improper manner in which the United States unloaded its cargo. It contends that the United States' agreement to discharge its own cargo carries with it the responsibility to discharge the cargo in a competent and safe manner, and that, consequently, the United States has an implied contractual obligation to indemnify Matson for any loss to Matson resulting from the discharge of the cargo in an improper and hazardous manner. To support this contention Matson cites Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. In Ryan, a stevedoring company had contracted with a steamship company to perform all stevedoring operations required by the steamship company in its coastwise service. The Supreme Court held that the agreement of the stevedoring company to perform all required stevedoring operations necessarily included an obligation to perform such operations properly and safely. Consequently, the Court decided that the stevedoring company had an implied contractual obligation to indemnify the steamship company for the damages it was required to pay to a stevedore who was injured as a result of improper stowage of cargo.

But, Ryan does not warrant a holding here that there was a contractual obligation on the part of the United States to indemnify Matson for any loss to Matson resulting from improper handling by the United States of its own cargo. In Ryan, the Supreme Court stated that the stevedoring company's obligation to handle cargo properly and safely was a warranty of workmanlike service comparable to a manufacturer's warranty of the soundness of its product. In the present case, the United States did not offer its services to Matson as a professional stevedore. It merely contracted to assume the responsibility for the removal of its own cargo from Matson's vessel. This is too flimsy a predicate for a warranty of professional competence from which could be implied a contractual obligation to indemnify Matson for any damages it might be required to pay another as a result of improper handling by the United States of its cargo. A fortiori, the agreement by the United States to unload its own cargo is an inadequate basis for an implied contractual obligation to indemnify Matson for any expense Matson might incur in defending unfounded lawsuits brought against it because of the manner in which the United States discharged its own cargo.

Furthermore, in the contract of affreightment the United States agreed to indemnify Matson for any damage to Matson's vessel caused by any neglect of the United States in discharging its own cargo. This express agreement fixing the limits of the United States' obligation negatives any broader obligation of indemnity.

The motion of the United States for summary judgment in its favor is granted.