**Harry A. STEVENS, Plaintiff,**

v.

**PACIFIC INLAND NAVIGATION CO., Inc., a Washington corporation, Defendant and Third-Party Plaintiff,**

v.

**CARGILL, INC., a Delaware corporation, Third-Party Defendant.**

Civ. No. 62–246.

United States District Court
D. Oregon.

Aug. 16, 1963.

Philip A. Levin, Pozzi, Levin & Wilson, Portland, Or., for plaintiff.

Kenneth E. Roberts, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendant.

Lamar Tooze, Jr., Tooze, Powers, Kerr, Tooze & Morrell, Portland, Or., for third-party defendant.

EAST, District Judge.

Pacific Inland Navigation Co., Inc., defendant and third-party plaintiff (Pinco) was the owner of a Columbia River wheat barge stowed at Burbank, Washington, with a cargo of wheat consigned to its owner, Cargill, Inc., third-party defendant, at its elevator pier in the Port of Portland. Under an oral carriage arrangement with Pinco, Cargill agreed to accept the wheat shipment in stowage at its pier and assume the work of discharging the cargo from the barge to its storage facilities.

Cargill's principal business, as far as we are here concerned, is that of a grain dealer and warehouseman and not a general stevedore.

Pinco towed the barge down through the Columbia Gorge in the winter time and as a natural incident of the voyage, the barge received a layer of snow and ice on her upper exposed deck, which condition existed when the barge was delivered and moored at Cargill's pier. Thereupon, Cargill contracted in its own right, through the regularly maintained union hiring hall in the Port of Portland, for the longshoremen to perform the cargo discharge work aboard the barge. In short, Cargill itself played the role of a stevedore, but without specific agreement or compensation except as may have been reflected in the oral carriage arrangement for the delivery and acceptance of the cargo in barge stowage, as mentioned. Compare Revel v. American Export Lines, 162 F.Supp. 279 (E.D.Va.1958).[1]

Plaintiff Stevens was a member of the longshoring gang hired by Cargill, and during the course of his work aboard the barge he was injured and sought recovery for his resulting damages in these personam proceedings. Stevens contended that his injuries were proximately caused by the unseaworthiness of the barge "in that the deck thereof was slippery and unsafe by reason of frozen snow and ice thereon."

Pinco tendered the defense of the action to Cargill, who declined and was thereupon joined as third-party defendant by Pinco.

Plaintiff's cause was tried to a jury which returned a general verdict in favor of Pinco. So Pinco now presses its third-party complaint for indemnity from Cargill for its costs and reasonable attorney's fees incurred in the defense of the action. The issue of indemnity was submitted to the court upon the evidence adduced before it during the jury trial of Stevens' cause and at a later segregated hearing.

In its cause of indemnity, Pinco contends that if Stevens slipped on the snow and ice and fell on the deck of the barge, it was because Cargill breached its stevedoring contract warranty in failing to perform the stevedoring work aboard the barge in a safe and workmanlike manner by not removing or alleviating the hazard of the snow and iced conditions which were open and obvious.

■ We of course know that where a stevedore's breach of warranty to perform his contract in a reasonably safe and workmanlike manner causes injury to an employee for which the shipowner is held liable or caused expense in mitigating loss or defeating liability upon the issue of alleged resulting unseaworthiness, gives rise to the right of indemnity for such losses and expenses from the stevedore. Ryan Stevedore Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, and a legion of it fellow travelers As I see it, whether the stevedore's breach of warranty itself has rendered the vessel unseaworthy or has activated a known pre-existing unseaworthy condition as causation of injury is a difference without legal significance or consequence. Crumady v. Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413, and a legion of its bedfellows.

1. Affirmed, 266 F.2d 82 (4th Cir. 1959). There, the shipowner was allowed indemnity from the charterer under a provision wherein the charterer agreed to arrange for loading and discharge of cargo and covenanted that "the cargo shall be efficiently loaded in the vessel." Revel, supra, p. 286 of 162 F.Supp.

Our chore here is to determine whether there is any basis to affix to or charge Cargill with a stevedore's implied warranty to conduct the work of discharging its cargo of wheat from the barge in a reasonably safe and workmanlike manner. It has been noted that Cargill was not engaged in the general stevedoring business and did not hold itself out to Pinco as an expert stevedore. Nevertheless, Pinco contends that since Cargill did undertake to and did do the work necessary to discharge its own cargo, that it actually assumed the role of an expert stevedore and thereby "entered into 'a contractual undertaking to (perform) with reasonable safety * * *'" and took on the obligations delineated and imposed by Ryan and Crumady. In other words, it seems that since Cargill had put on the hat or the mask of a stevedore it must stride the boards, play the role to the last lines, measure, and encores, and also pay the theater rent. This seems to be the conclusion reached in Rogers v. United States Lines, 303 F. 2d 295 (3rd Cir. 1962)[2]; however, this profile of Rogers wilts under the glare of the strong and solid faces of Matson Navigation Co. v. United States, 173 F.Supp. 562 (N.D.Cal.1959); Sea Comet II, 1962 AMC 961 (W.D.Wash.1961); and Drago v. Inger, 194 F.Supp. 398 (E. D.N.Y.1961).

It is suggested that Rogers is distinguishable from Matson in that the consignee hired an expert stevedoring organization or entity to perform its agreement to unload, and I think it might be, but be that as it may, the ruling of Rogers otherwise must bow and step aside from the thrust of the teachings of Matson, supra, at p. 564 of 173 F.Supp. 562:

"But, Ryan does not warrant a holding here that there was a contractual obligation on the part of the United States [Cargill] to indemnify Matson [Pinco] for any loss to Matson resulting from improper handling by the United States of its own cargo. In Ryan, the Supreme Court stated that the stevedoring company's obligation to handle cargo properly and safely was a warranty of workmanlike service comparable to a manufacturer's warranty of the soundness of its product. In the present case, the United States did not offer its services to Matson as a professional stevedore. It merely contracted to assume the responsibility for the removal of its own cargo from Matson's vessel. This is too flimsy a predicate for a warranty of professional competence from which could be implied a contractual obligation to indemnify Matson for any damages it might be required to pay another as a result of improper handling by the United States of its cargo. A fortiori, the agreement by the United States to unload its own cargo is an inadequate basis for an implied contractual obligation to indemnify Matson for any expense Matson might incur in defending unfounded lawsuits brought against it because of the manner in which the United States discharged its own cargo."

and the logic of Drago, supra, at p. 410 of 194 F.Supp.:

"The stevedore's warranty arises because it holds itself out to do a job; that it is proficient in its work which, being done aboard a ship, is necessarily fraught with danger and therefore requires a degree of expertise. The charterer, on the other hand, makes no representation that it is either an expert seaman or an expert stevedore. Workmanlike service and reasonable safety on the part of the charterer are not the 'essence' of the charter as they are of a stevedoring contract."

2. "Appellant, in accepting responsibility for the unloading of its cargo, entered into 'a contractual undertaking to [perform] "with reasonable safety."'" Rogers v. United States, at p. 298 of 303 F. 2d.

It follows that since Cargill made no stevedore's implied warranty of reasonable safe and workmanlike performance to Pinco, there is no implied contract to indemnify Pinco for liability loss upon a breach, if any; hence, there is no foundation upon which to base a claim against Cargill for Pinco's attorney's fees and costs incurred in defending Pinco's alleged liability. McCall v. Overseas, etc., 222 F.2d 441 (2nd Cir. 1955), cited in Caswell v. Koninklyke, etc., 205 F.Supp. 295 (N.D.Tex.1962).

The court notes that the issue of indemnity for attorney's fees and expense in a successful defense as here presented is of first impression to the District Court of Oregon.

From the foregoing, I conclude that Pinco's third-party complaint against Cargill and its cause for indemnity thereunder should each be dismissed without cost to either party, and

It is so ordered.