James R. PADGETT and Joyce Padgett, his wife, Plaintiffs,

v.

MOORE–McCORMACK LINES, INC., a Foreign Corporation, Defendant and Third-Party Plaintiff,

v.

UNITED STATES of America, Third-Party Defendant.

No. C74–772.

United States District Court, W. D. Washington.

Nov. 8, 1977.

Paul D. Jackson, of Schroeter, Jackson, Goldmark & Bender, Seattle, Wash., for plaintiffs.

Vincent R. Larson, of Riddell, Williams, Ivie, Bullitt & Walkinshaw, Seattle, Wash., for defendant and third-party plaintiff.

Harry McCarthy and Paul G. Sterling, of Admiralty and Shipping Section, U. S. Dept. of Justice, San Francisco, Cal., for third-party defendant.

### OPINION

BEEKS, Senior District Judge.

This dispute arises from a personal injury sustained during a stevedoring operation. Plaintiff was a civil service employee of the United States (a "blocker and bracer") at the Naval Ammunition Depot at Bangor, Washington. On August 30, 1972 he injured his left leg while engaged in loading the S.S. MOOREMAC CAPE (CAPE), owned by defendant and third party plaintiff Moore-McCormack (MooreMac) and time chartered to third party defendant United States (U.S.). At the time of the injury the U.S. was engaged in loading its own cargo aboard the CAPE pursuant to the terms of the time charter. The injury occurred in No. 1 hold when a fork lift operator, also a civil service employee of the U.S., as were all involved in the loading operation, backed a fork lift into a plank which Padgett was sawing in the course of his duties as a blocker and bracer. The plank struck Padgett's left leg behind the knee and pinned it against a cargo pallet.

As a result of this accident Padgett sued MooreMac who, in turn, sought indemnity from the U.S., Padgett's employer. At trial a settlement was negotiated between Padgett and MooreMac. The U.S. and Moore-Mac agreed to submit memoranda on the issues in the third party action to this Court for decision.

■ To maintain this action for indemnity, MooreMac must establish preliminarily (1) potential liability to Padgett and (2) that the settlement was reasonable.[1]

■ It appears that the direct and immediate cause of Padgett's injury was the operation of a lift truck by a fellow longshoreman. Assuming the operator to have been negligent, this is an insufficient basis

1. *California Stevedore & Ballast Co. v. Pan-Atlantic Steamship Corp.*, 291 F.2d 252 (9th Cir. 1961).

upon which to establish potential unseaworthiness of CAPE and, thus, potential liability of MooreMac.[2] I am of the view, however, that the cramped condition in No. 1 hold in which both Padgett and the lift truck were working potentially rendered the vessel unseaworthy. The working space was inadequate to carry on both operations simultaneously and created an unsafe place to work, which was a contributory cause of plaintiff's injury. Furthermore, I find MooreMac's settlement with plaintiff to be reasonable.

■ Having found potential liability and a reasonable settlement, there remain two further questions: 1) Did the Government owe a warranty of workmanlike performance to MooreMac within the purview of *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.,*[3] and 2) Is the exclusive remedy provision of the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8116(c), a bar to this action. The considered weight of authority dictates that the former must be answered in the affirmative and the latter in the negative.

The rationale and holding of *Ryan* are well known and need no extended explication here. Suffice it to say that in recognizing the existence of an implied warranty of workmanlike performance between the stevedore and the shipowner, the *Ryan* Court held that the exclusive remedy provision of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) § 5,[4] applied only to the employee and his dependents. The Court stated that the shipowner's indemnity action was not an action by or on behalf of the employee nor was it one to recover damages "on account of" an employee's death or injury.[5] Rather, it was "grounded upon the contractor's breach of its purely consensual obligation owing to the shipowner to stow cargo in a reasonably safe manner."[6]

The Court used similar reasoning in *Weyerhaeuser Steamship Co. v. United States*[7] in holding that the exclusivity provision of FECA did not affect the application of the divided damages rule in mutual fault collision cases. Noting that the exclusivity provision of FECA was nearly identical to the analogous provision of LHWCA,[8] the Court stated:

> The purpose of § 7(b), added in 1949, was to establish that, as between the Government on the one hand and its employees and their representatives or dependents on the other, the statutory remedy was to be exclusive. There is no evidence whatever that Congress was concerned with the rights of unrelated third parties . . . .[9]

This decision allowed Weyerhaeuser to include in its total damage claim, to be divided equally with the U.S., the damages Weyerhaeuser paid to a civil servant injured aboard its vessel in the collision between the S.S. F. E. WEYERHAEUSER and the U.S. Army Dredge PACIFIC.

*Weyerhaeuser S.S.* was first interpreted by the Ninth Circuit in *United Air Lines v. Weiner.*[10] There it was held that United Air Lines was entitled to be indemnified by the U.S. for all damages arising from the deaths of non-government employee passengers of its airliner which collided with an Air Force jet fighter. Indemnity for the deaths of government employee passengers

---

2. *Usner v. Luckenbach Overseas Corp.,* 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971).

3. 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

4. 33 U.S.C. § 905.

5. 350 U.S. at 130–131, 76 S.Ct. 232, 235–236, 100 L.Ed. at 140.

6. *Id.* at 131–32, 76 S.Ct. at 236, 100 L.Ed. at 140. *Ryan* was "overruled" by the 1972 amendments to the LHWCA which became law on October 27, 1972. FECA has not been similarly amended.

7. 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963).

8. 372 U.S. at 602, 83 S.Ct. 926.

9. *Id.* at 601, 83 S.Ct. at 929, 10 L.Ed.2d at 5.

10. 335 F.2d 379 (9th Cir. 1964), *cert. dismissed sub nom.,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964).

was denied because United Air Lines failed to meet the *Weyerhaeuser S.S.* requirements of showing that the U.S. owed them a duty of indemnity "by virtue of a contract, attenuated or otherwise, or by operation of a rule of law such as the divided damage rule of admiralty." [11] United Air Lines could not succeed on the basis of tort indemnity since "the exclusive liability provision [of FECA] removed the underlying [tort] liability necessary for indemnity." [12]

It is therefore clear that the exclusive remedy provision of FECA does not *per se* bar an indemnity action by an independent third party such as MooreMac. MooreMac may surmount the exclusivity provision by establishing under *Weiner* that the Government owed it a consensual duty of indemnity. [13]

■ The Government contends that it did not warrant workmanlike performance to MooreMac because it did not agree to perform "professional" stevedoring services. It argues that under *Matson Navigation Co. v. United States* [14] the terms of the charter did not provide an adequate basis from which could be implied a contractual obligation of indemnity.

In *Matson* a longshoreman employed by the U.S. was killed when he fell while unloading cargo belonging to the U.S. The longshoreman's widow and children received compensation benefits under FECA. They also sued Matson who owned and operated the vessel at the time of the accident, who, in turn, sued the Government for indemnity. The jury found for Matson. Matson then sought to recover attorneys' fees and expenses incurred in successfully defending the lawsuit. The Court granted summary judgment in favor of the Government:

[T]he United States did not offer its services to Matson as a professional stevedore. It merely contracted to assume the responsibility for the removal of its own cargo from Matson's vessel. This is too flimsy a predicate for a warranty of professional competence from which could be implied a contractual obligation to indemnify Matson for any damages it might be required to pay another as a result of improper handling by the United States of its cargo. A fortiori, the agreement by the United States to unload its own cargo is an inadequate basis for an implied contractual obligation to indemnify Matson for any expense Matson might incur in defending unfounded lawsuits brought against it because of the manner in which the United States discharged its own cargo.

Furthermore, in the contract of affreightment the United States agreed to indemnify Matson for any damage to Matson's vessel caused by any neglect of the United States in discharging its own cargo. This express agreement fixing the limits of the United States' obligation negatives any broader obligation of indemnity. [15]

The Government points to the Dangerous Cargo provision and the Ship Damage Indemnity provision of the charter and urges that they be interpreted in light of *Matson*. [16] The Government's request must be declined; *Matson* no longer represents the weight of authority. *Matson* was decided 18 years ago, prior to the onset of the "revolution taking place in the distribution of maritime risk." [17] Since *Matson* the warranty of workmanlike performance has frequently been extended to maritime contrac-

---

**11.** *Id.* at 404.

**12.** *Id.* at 403. *Weiner* was reaffirmed by the Ninth Circuit in *Adams v. Gen'l Dynamics Corp.*, 535 F.2d 489 (1976), *cert. denied*, 432 U.S. 905, 97 S.Ct. 2949, 53 L.Ed.2d 1077 (1977).

**13.** *See Murray v. United States*, 132 U.S.App. D.C. 91, 96, 405 F.2d 1361, 1366 (1968).

**14.** 173 F.Supp. 562 (N.D.Cal.1959).

**15.** *Id.* at 564.

**16.** MooreMac points to other provisions of the charter which it claims incorporates the full scope of *Ryan* indemnity.

**17.** *Allison v. Cosmos Steamship Corp.*, 331 F.Supp. 1319, 1320 (W.D.Wash.1971).

tors generally.[18] Furthermore, it was decided only three years after *Ryan* and prior to *Weyerhaeuser S.S.* and *Italia Societa v. Oregon Stevedoring Co.*[19]

In *Oregon Stevedoring* the Supreme Court took particular care to place the implied warranty of workmanlike performance on the party charged with control and supervision of the stevedoring operation. "[L]iability should fall upon the party best situated to adopt preventative measures and thereby . . . reduce the likelihood of injury."[20] Thus, the stevedore who non-negligently supplied defective equipment which caused injury to one of its employees was charged with a breach of its *Ryan* obligation to the shipowner.[21]

The Government's argument that no warranty was made because it was not acting as a "professional stevedore" proves too much. It hired Padgett as a blocker and bracer for the purpose of loading Government cargo at a Government facility aboard a vessel under time charter to the Government. Government longshoremen under Government supervision were involved in the events which resulted in the injury to Padgett. Clearly, the United States was engaging in stevedoring operations.

In *Henderson v. S. C. Loveland Co., Inc.*[22] a similar argument by the Government failed. In that case a Government employee was injured while unloading Government cargo from a Loveland barge at Pensacola Naval Air Station. The plaintiff recovered against the barge owner under a cause of action based on unseaworthiness and the barge owner successfully prosecuted an indemnity action against the United States. "[A]s the United States undertook to perform, and was performing, as a stevedore, it had the duties a stevedore would have under the law, including the duty to perform in a workmanlike manner."[23]

I agree. As discussed above, under the weight of authority as now exists, the United States was charged with a duty of workmanlike performance. The reliance of the U.S. on the provisions of the charter (which was drafted by the Government) as construed under *Matson* is unavailing. *Matson* no longer represents the weight of authority nor did the court in that case have the guidance of *Weyerhaeuser S.S.* or *Oregon Stevedoring*.

I conclude as a matter of law that at the time of the accident the U.S. owed a consensual duty of workmanlike performance to MooreMac. MooreMac has thus met the requirements of *Weiner* and is entitled to be indemnified upon showing that the U.S. breached its warranty of workmanlike performance.

18. *United States v. San Francisco Elevator Co.,* 512 F.2d 23 (9th Cir. 1975) holding that elevator company, a subcontractor of a shipyard which was conducting the repairs on a Government vessel, owed a warranty of workmanlike performance to the Government and must indemnify it for breach; *Sandoval v. Mitsui Sempaku K. K. Tokyo,* 460 F.2d 1163, 1167–69 (5th Cir. 1972) holding, *inter alia,* that shipowner who was found liable to lineholder employed by federally owned Panama Canal Company could recover indemnity from the Canal Company under *Ryan,* and that FECA did not bar indemnity under *Weyerhaeuser S.S.; Whisenant v. Brewster-Bartle Offshore Co.,* 446 F.2d 394 (5th Cir. 1971) extending *Ryan* warranty to drill pipe testing company whose conduct aboard defendant's barge rendered it unseaworthy; *United States v. Tug MANZANILLO,* 310 F.2d 220 (9th Cir. 1962) allowing Government to recover indemnity from tug owners for breach of *Ryan* warranty. *See United New York Sandy Hook Pilots Ass'n v. Rodermond*

Industries, Inc., 394 F.2d 65, 71 and authorities cited therein (3rd Cir. 1968).

19. 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964).

20. 376 U.S. at 324, 84 S.Ct. at 754, 11 L.Ed.2d at 740.

21. *Oregon Stevedoring* is particularly apposite in view of the Government's attitude towards the subject injury: "Clearly, the concerns of the United States in handling military explosives have nothing to do with such an injury, which could have occurred regardless of the nature of the cargo." Post-trial Memo of the U.S. Regarding Third Party Action, at 6.

22. 381 F.Supp. 1102 (N.D.Fla.1974).

23. *Id.* at 1105. *See Hopson v. M/V KARL GRAMMERSTORF,* 330 F.Supp. 1260 (E.D.La. 1971).

I further conclude that the U.S. did indeed breach its warranty of workmanlike performance. Thus, no obstacle to Moore-Mac's indemnity claim remains.

Accordingly, I find in favor of MooreMac on its third party claim of indemnity. If counsel are unable to agree within thirty days from the date hereof upon the amount of costs and attorneys' fees to be allowed, application may be made to this Court for further proceedings in respect thereto.

To the extent required, this opinion shall constitute this Court's findings of fact and conclusions of law under F.R.C.P. 52(a).